TEVIS v AMEX ASSURANCE COMPANY

Docket No. 282412. Submitted January 13, 2009, at Detroit. Decided
   March 19, 2009, at 9:25 a.m.

   Terrence Tevis brought an action in the Genesee Circuit Court against
      Amex Assurance Company and Geico Indemnity Company, seeking
      no-fault personal protection insurance benefits after he was injured
      in Michigan in a collision involving a motorcycle he was operating and
      an automobile. The plaintiff did not have a no-fault automobile
      insurance policy of his own, but he lived with his parents, who had a
      no-fault policy from Geico. The automobile involved in the accident
      was covered by a policy issued in the state of Washington by Amex,
      which had filed a certification pursuant to MCL 500.3163 that any
      accidental bodily injury or property damage occurring in Michigan
      arising from the ownership, operation, maintenance, or use of a
      motor vehicle by an out-of-state resident who is insured under an
      automobile liability insurance policy from Amex would be subject to
      the personal and property protection insurance system of the no-fault
      act. Both insurers moved for summary disposition, each claiming that
      the other was first in priority of liability. The court, Geoffrey L.
      Neithercut, J., granted Geico's motion and denied Amex's motion.
      Case evaluation ended in a proposed award of $190,000 in favor of the
      plaintiff and against Amex. The plaintiff accepted the award, but
      Amex rejected it. The plaintiff and Amex stipulated a single issue to
      be decided by the jury—whether the plaintiff owned the motorcycle
      involved in the accident—and further stipulated the amount of
      damages the plaintiff would recover if the jury finds that he did not
      own the motorcycle. The jury determined that the plaintiff did not
      own the motorcycle. The damages, as adjusted under the case
      evaluation court rule, MCR 2.403, were more favorable to the
      plaintiff than the case evaluation. The plaintiff moved for case
      evaluation sanctions and attorney fees pursuant to MCL 500.3148 of
      the no-fault act. The court denied the motion. Amex appealed, and
      the plaintiff cross-appealed.

      The Court of Appeals held:

      1. Amex has standing to pursue an appeal. It is an aggrieved
   party whose appeal of the trial court's ruling on the motions for
   summary disposition is within the jurisdiction of the Court of
   Appeals under MCR 7.203(A).

2. Under MCL 500.3163, Amex may be liable for personal protection insurance benefits for a Michigan resident injured in an accident involving an out-of-state vehicle insured by Amex, an out-of-state insurer that has filed a certification pursuant to MCL 500.3163. This statute explicitly provides that an insurer may file a certification that any accidental bodily injury or property damage occurring in Michigan and arising from the ownership of a motor vehicle by an out-of-state resident insured by the insurer under an automobile liability policy is subject to the personal and property protection insurance system under the no-fault act. The statute has no language limiting an out-of-state insurer's liability to situations when the accidental bodily injury is sustained by its insured, nor is there any restriction on the application of the no-fault act. MCL 500.3163(3) also explicitly provides that claimants have the right to receive benefits from the insurer as if the insurer were an insurer of personal and property protection insurance applicable to accidental bodily injury or property damage.

3. Amex is first in priority of liability for the personal protection insurance benefits claimed by the plaintiff. Under MCL 500.3114(5)(a), the insurer of the owner or registrant of a motor vehicle involved in an accident with a motorcycle is first in priority of liability for personal protection insurance benefits claimed by an operator or passenger of the motorcycle.

4. Even though the jury did not determine the amount of damages for the plaintiff because of the parties' stipulation, it nevertheless rendered a verdict more favorable to the plaintiff than the case evaluation for purposes of case evaluation sanctions against Amex. None of the exceptions to the mandatory imposition of sanctions pursuant to MCR 2.403 applies. The trial court erred in denying the plaintiff's motion for case evaluation sanctions against Amex.

5. The trial court correctly determined that the plaintiff was not entitled to an award of attorney fees under MCL 500.3148. Amex's refusal to pay the plaintiff's claim was not unreasonable, given the question of fact regarding ownership of the motorcycle and also because of the question relating to the applicability of MCL 500.3163 to this case.

Affirmed in part, reversed in part, and remanded for entry of a judgment in the plaintiff's favor that includes case evaluation sanctions.

1. INSURANCE — NO-FAULT — NONRESIDENT MOTOR VEHICLE OWNERS — OUT-OF-STATE AUTOMOBILE LIABILITY INSURERS — CERTIFICATION OF NO-FAULT COVERAGE.

An out-of-state insurer that is not authorized to transact automobile

liability insurance and personal and property protection insurance in Michigan may voluntarily file a certification that any accidental bodily injury or property damage occurring in Michigan and arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident will be subject to the personal and property protection insurance system set forth in the no-fault act; no-fault coverage pursuant to such certification applies to any accidental bodily injury or property damage sustained in Michigan, not just those sustained by the out-of-state insured (MCL 500.3163).

2. PRETRIAL PROCEDURE — CASE EVALUATION SANCTIONS — PARTIES REJECTING CASE EVALUATION — VERDICTS FOR PURPOSES OF AWARDING CASE EVALUATION SANCTIONS — STIPULATED DAMAGES.

A jury, in a case in which a party has rejected a case evaluation and the parties have stipulated an award of damages for the plaintiff depending on a specific finding of fact by the jury, renders a verdict for purposes of possible case evaluation sanctions when it makes its finding of fact (MCR 2.403[O][2]).

*George Hamo* for Terrence Tevis.

*Kopka, Pinkus, Dolin & Eads, PLC* (by *Aaron D. Sims* and *Michelle T. Trasher*), for Amex Assurance Company.

*Moblo & Fleming, P.C.* (by *David J. Fleming* and *Allison L. Silverstein*), for Geico Indemnity Company.

Before: SAAD, C.J., and DAVIS and SERVITTO, JJ.

PER CURIAM. Amex Assurance Company (Amex) appeals as of right the trial court's order granting Geico Indemnity Company's motion for summary disposition and denying Amex's cross-motion for summary disposition. Plaintiff cross-appeals from the trial court's order denying his motion for case evaluation sanctions against Amex and for attorney fees pursuant to the no-fault act. We affirm in part, reverse in part, and remand for entry of a judgment in plaintiff's favor inclusive of case evaluation sanctions.

This matter arises out of an automobile-motorcycle accident in which the motorcycle operator, plaintiff, incurred serious injuries. The automobile involved in the accident was covered by an insurance policy issued in the state of Washington by Amex. While plaintiff did not have a no-fault insurance policy, his parents, with whom he resided, had such a policy issued by defendant Geico Indemnity Company (Geico). When both insurers failed or refused to pay personal protection insurance (PIP) benefits to plaintiff, he initiated this action. Shortly after this action commenced, Geico moved for summary disposition on the basis that Amex was the insurer first in priority for purposes of PIP benefits payable to or on behalf of plaintiff. Amex also moved for summary disposition, arguing that Geico was the first priority insurer. The trial court agreed with Geico and granted its motion for summary disposition, while denying Amex's cross-motion. This Court denied Amex's application for leave to appeal and the matter proceeded to trial against Amex. A judgment was ultimately entered in favor of plaintiff and against Amex in the amount of $326,895.01. Plaintiff thereafter sought case evaluation sanctions and attorney fees, both of which the court declined to award. These appeals followed.

## I. STANDING TO APPEAL

At the outset, we note that plaintiff and Geico challenge Amex's standing to pursue an appeal, arguing that, absent a cross-claim against Geico, Amex has no right to appeal the summary disposition ruling in Geico's favor. We disagree.

Pursuant to MCR 7.203(A), this Court "has jurisdiction of an appeal of right filed by an aggrieved party." The term "aggrieved party" is defined, for purposes of MCR 7.203, as one who is not merely disappointed over

a certain result, but one who has "suffered a concrete and particularized injury. . . . [A] litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292, 715 NW2d 846 (2006).

On appeal, Amex's sole argument is that the trial court erred in interpreting and applying of MCL 500.3163. The lower court's ruling regarding this statute served as the basis for the determination that Amex was liable for PIP benefits payable to, or on behalf of, plaintiff and for granting Geico's motion for summary disposition and denying Amex's cross-motion for summary disposition. Because Amex's pecuniary interest has been directly affected by the summary disposition order and Amex has suffered a particularized "injury," it is an "aggrieved party" with respect to the trial court's summary disposition ruling. Amex has standing to challenge that ruling on appeal.

## II. STANDARD OF REVIEW

We review a trial court's decision regarding a motion for summary disposition de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). A motion brought under MCR 2.116(C)(10) tests the factual support for the claim. *Id.* When reviewing a motion for summary disposition brought under MCR 2.116(C)(10), the Court must examine the documentary evidence presented below and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Summary disposition may be granted under MCR 2.116(C)(10) when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). We review issues of statutory interpretation de novo. *Fisher v Fisher*, 276 Mich App 424, 427; 741 NW2d 68 (2007).

### III. COVERAGE BY A NONRESIDENT'S OUT-OF-STATE INSURANCE POLICY FOR INJURIES TO A MICHIGAN RESIDENT

Amex contends that the trial court erred by ruling that MCL 500.3163 was applicable to the instant matter and by relying on the statute to grant summary disposition in Geico's favor on the issue of priority. We disagree.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. *Liberty Mut Ins Co v Michigan Catastrophic Claims Ass'n*, 248 Mich App 35, 45; 638 NW2d 155 (2001). The first criterion in determining intent is the language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. *Id.* However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Id.* Only if the language is ambiguous do we look to other factors in attempting to ascertain the purpose behind the legislation. A liberal construction in favor of the public and the policyholders is preferred when the statute involved is an insurance law. *Michigan Life Ins Co v Comm'r of Ins*, 120 Mich App 552, 558; 328 NW2d 82 (1982).

MCL 500.3163 provides:

(1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage

occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act.

(2) A nonadmitted insurer may voluntarily file the certification described in subsection (1).

(3) Except as otherwise provided in subsection (4), if a certification filed under subsection (1) or (2) applies to accidental bodily injury or property damage, the insurer and its insureds with respect to that injury or damage have the rights and immunities under this act for personal and property protection insureds, and claimants have the rights and benefits of personal and property protection insurance claimants, including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage.

(4) If an insurer of an out-of-state resident is required to provide benefits under subsections (1) to (3) to that out-of-state resident for accidental bodily injury for an accident in which the out-of-state resident was not an occupant of a motor vehicle registered in this state, the insurer is only liable for the amount of ultimate loss sustained up to $500,000.00. Benefits under this subsection are not recoverable to the extent that benefits covering the same loss are available from other sources, regardless of the nature or number of benefit sources available and regardless of the nature or form of the benefits.

As noted by our Court in *Kriko v Allstate Ins Co of Canada*, 137 Mich App 528, 532; 357 NW2d 882 (1984), there are at least two benefits that an out-of-state insurance company receives by filing and maintaining on file a § 3163 certificate, even though it does not write any motor vehicle insurance policies in this state. First, the out-of-state insurance company makes its insurance policies more attractive to potential customers who

might be regular travelers in the state of Michigan. Second, the out-of-state insurer may avail itself of the potential benefits provided by Michigan's no-fault system by filing its certification. There is no dispute that Amex filed the § 3163 certificate in the instant matter, thus subjecting itself to, and availing itself of, Michigan's no-fault system. The issue is whether, as Geico contends (and plaintiff concurs), MCL 500.3163 places Amex in the priority position for purposes of PIP benefits to a Michigan resident who was injured in an accident involving an out-of state vehicle insured by out-of state insurer Amex. We hold that it does.

Michigan cases addressing the application of MCL 500.3163 generally involve situations where a nonresident, insured by an out-of state insurer who has filed the certification set forth in MCL 500.3163(1), is seeking benefits from that out-of-state insurer for injuries that occurred in a Michigan automobile accident. These cases initially appear to support an argument that the statute imposes liability for benefits on an out-of-state insurer only where its own insured suffers injuries. In *Transport Ins Co v Home Ins Co*, 134 Mich App 645, 651; 352 NW2d 701 (1984), for example, a panel of our Court determined that the only conditions for an insurer's liability under § 3163 are: (1) certification of the carrier in Michigan, (2) existence of an automobile liability policy between the nonresident and the certified carrier, and (3) a sufficient causal relationship between the *nonresident's injuries* and his or her ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. *Transport Ins Co* appears to indicate liability only attaches to an out-of-state insurer with respect to injuries incurred by an out-of-state resident. Later Michigan cases involving § 3163 have employed this same standard. *Liberty Mut Ins Co v Michigan Catastrophic Claims Ass'n*, 248 Mich App 35,

40; 638 NW2d 155 (2001), for example, noted that "[u]nder MCL § 500.3163(1), insurers authorized to transact PIP insurance in Michigan are required to pay Michigan PIP benefits to their out-of-state resident insureds in the event of a motor vehicle accident occurring in Michigan." See, also, *Goldstein v Progressive Casualty Ins Co*, 218 Mich App 105, 110; 553 NW2d 353 (1996) ("the apparent intent of § 3163 . . . is to guarantee that insured nonresidents injured in Michigan are protected against economic losses to the same extent as Michigan residents"). None of these cases, however, involved or addressed the very narrow issue presented to this Court—whether no-fault benefits are payable by an out-of-state insurer to, or on behalf of, a *Michigan* resident injured in an accident resulting from its nonresident insured's ownership of a motor vehicle. The above cases provide little guidance.

The explicit language of MCL 500.3163 provides that an insurer may file a certification that *any* accidental bodily injury or property damage occurring in Michigan and arising from the ownership of a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies is subject to the personal and property protection insurance system under the Michigan no-fault act. There is no language limiting an out-of-state insurer's liability only to situations where the accidental bodily injury is sustained by its insured, nor is there any restriction on the application of the no-fault act. Instead, the above language unequivocally subjects the out-of-state insurer to the *entire* Michigan personal and property insurance system when *any* accidental bodily injury arising from an out-of-state insured's ownership or use of a motor vehicle occurs.

MCL 500.3163(3) also explicitly provides that if the certification applies to accidental bodily injury or prop-

erty damage, not only do the insurer and its insureds have the rights and immunities under the no-fault act for personal and property protection, *claimants* have the rights and benefits of personal and property protection insurance claimants, "including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage." By including such language, the Legislature clearly contemplated that persons other than an out-of-state insurer's insureds may have a right to recover benefits from the out-of state insurer. The language in MCL 500.3163 being clear and unambiguous, judicial construction is neither required nor permitted, and we must apply the statute as written. *Liberty Mut Ins Co, supra.* In doing so, we conclude that the trial court properly determined that MCL 500.3163 applies.

Because Amex filed a § 3163 certificate, it agreed to be governed by the Michigan no-fault act when an accident involving its insured's vehicle occurred in Michigan, and we look to MCL 500.3114 to determine the order of priority for payment of no-fault benefits. MCL 500.3114(5) provides:

> (5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

Applying the above to the facts at hand, Amex, being the insurer of the owner of the motor vehicle involved in the accident, is the priority insurer for purposes of no-fault benefits payable to, or on behalf of, plaintiff. The trial court therefore did not err in its summary disposition ruling. We next turn to plaintiff's cross appeal, beginning with his claim of entitlement to case evaluation sanctions.

### IV. CASE EVALUATION SANCTIONS

A trial court's decision whether to grant case evaluation sanctions presents a question of law, which this Court reviews de novo. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Case evaluation sanctions are provided for at MCR 2.403(O) "(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. . . ." The use of the word "must" indicates that the imposition of these sanctions is mandatory. *Allard v State Farm Ins Co*, 271 Mich App 394, 398-399; 722 NW2d 268 (2006). The purpose of case evaluation sanctions is to shift the financial burden of trial onto the party who demands a trial by rejecting a proposed case evaluation award. *Id.*

Here, it is undisputed that the case evaluation award was $190,000 in favor of plaintiff and against Amex. It is also undisputed that plaintiff accepted and Amex rejected the award. The matter then proceeded to trial. The only issue presented to the jury, though, was whether plaintiff owned the motorcycle at the time of the accident (he not being entitled to PIP benefits if he was the owner of an uninsured motorcycle). The parties

stipulated the amount of damages in the event that the jury found that plaintiff was not the owner of the motorcycle. The jury found that plaintiff was not the owner, and while Amex does not dispute that the damages award was more favorable to plaintiff ($296,503.47, adjusted pursuant to MCR 2.403[O][3] to $326,895.01), it nevertheless asserts that plaintiff was not entitled to case evaluation sanctions. According to Amex, because the parties stipulated the amount of damages, the jury did not render a "verdict" as contemplated by MCR 2.403(O) and plaintiff is precluded from seeking case evaluation sanctions. We disagree.

MCR 2.403(O)(2) provides:

> For the purpose of this rule "verdict" includes,
>
> (a) a jury verdict,
>
> (b) a judgment by the court after a nonjury trial,
>
> (c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation

While the jury in this matter did not determine the precise amount of the damages in light of the parties' stipulation, the jury's determination that plaintiff was not the owner of the motorcycle and thus entitled to PIP benefits *necessarily* led to the entry of a judgment incorporating the stipulated damages award. The parties both understood, when making their damages stipulation, that if the jury found that plaintiff was entitled to PIP benefits, a judgment would enter in the amount agreed upon by the parties. The jury verdict, then, was essentially that plaintiff was entitled to PIP benefits in the amount agreed upon by the parties. That the actual amount does not appear on the jury verdict form does not make it any less a part of the verdict. Moreover, MCR 2.403(O)(2) provides that "verdict"

*includes* those items listed in subsections a through c. Nothing in the rule indicates that a verdict is limited to only those items.

The verdict in this matter was indisputably more favorable to plaintiff, as defined in MCR 2.403(3), than the case evaluation. There are only three narrow exceptions to the mandatory imposition of case evaluation sanctions. *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 130; 573 NW2d 61 (1997). First, the trial court may decline to award costs in a case involving equitable relief when the verdict is more favorable to the rejecting party than the evaluation award. *Id*. The second exception applies only to dramshop actions. Third, the trial court "may, in the interest of justice, refuse to award costs" when the judgment is "entered as a result of a ruling on a motion after the party rejected the [case] evaluation" under MCR 2.403(O)(2)(c). *Id*. Because this case does not fall within any of the exceptions provided in the plain language of the court rule, the trial court was required to award case evaluation sanctions to plaintiff.

The trial court, however, was not required to award plaintiff his requested attorney fees. Plaintiff sought attorney fees pursuant to MCL 500.3148:

> (1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

The trial court's decision about whether the insurer acted reasonably involves a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d

552 (2008). What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. *Id.* Questions of law are reviewed de novo; a trial court's findings of fact are reviewed for clear error. *Id.*

In declining to award attorney fees, the trial court stated, in part:

> . . . I can't give you what you request because, first of all, this whole ownership issue is on appeal constantly, and the Court of Appeals needs to resolve it and they haven't . . . . And until they resolve it, it's hard to accuse any insurance company of being frivolous because they're trying to get out from responsibility for something when they don't know who the owner is. And, secondly, I really kind of locked myself in when I denied that summary disposition motion that they brought because when I said it was a factual dispute . . . if I rule those ways, then I can't accuse them of being frivolous in their defense of the case.

Plaintiff places undue emphasis on the court's use of the word "frivolous," in making its ruling, contending that the trial court employed the wrong standard in determining the issue of attorney fees. It can be gleaned from its reasoning, however, that the trial court essentially determined that Amex's initial refusal of PIP benefits was not unreasonable. The trial court indicated that the issue for trial, ownership, is still often subject to dispute and not entirely resolved by this Court, and that it had previously concluded that a factual dispute about ownership existed in this matter. Moreover, as addressed elsewhere in this opinion, whether MCL 500.3163 applied to the specific factual situation presented in this case had not previously been considered by this Court. Given the above, we, like the trial court, cannot conclude that Amex unreasonably refused to pay

PIP benefits and we therefore cannot conclude that the trial court erred in declining to award attorney fees.

Affirmed in part, reversed in part, and remanded for the entry of a judgment in plaintiff's favor inclusive of case evaluation sanctions. We do not retain jurisdiction.