JOHNSON v RECCA

Docket No. 294363. Submitted March 8, 2011, at Lansing. Decided April
5, 2011, at 9:15 a.m. Reversed in part, 492 Mich 169.

Penny Jo Johnson filed an action in the Osceola Circuit Court
against John Recca, seeking third-party no-fault benefits, and
Allstate Property and Casualty Insurance Company, seeking first-
party no-fault benefits. Plaintiff claimed that she had sustained a
serious impairment of a body function after being hit in an
automobile-pedestrian collision involving Recca and also sought
damages for replacement services obtained more than three years
after the accident. The claims against Recca and Allstate were
severed. The court granted summary disposition for Allstate, but
the Court of Appeals reversed in an unpublished opinion per
curiam, issued November 9, 2010 (Docket No. 292401). In the
action against him, Recca moved for summary disposition. The
court, Scott Hill-Kennedy, J., granted the motion, ruling that
replacement services are not "allowable expenses" that a plaintiff
may recover in a third-party action pursuant to MCL
500.3531(3)(c). The court also concluded as a matter of law that
Johnson had not suffered an impairment of a body function that
affected her ability to lead her normal life. Johnson appealed.

The Court of Appeals *held*:

1. A plaintiff may recover damages for replacement services
that are in excess of the daily and 3-year limitations contained in
MCL 500.3107(1)(c) in a third-party action. MCL 500.3107(1)(a)
allows an injured person to receive personal protection insurance
benefits that include allowable expenses which are reasonable
charges incurred for reasonably necessary products, services, and
accommodations for the injured person's care, recovery, or reha-
bilitation. Replacement services are services for the care of an
injured person necessitated by a motor vehicle accident. Thus,
replacement services are not separate and distinct from "allowable
expenses" as defined in MCL 500.3107(1)(a), but are simply a
category of allowable expenses that the Legislature chose to place
limits on for purposes of recovering them as first-party benefits.
Under MCL 500.3135(3)(c), tort liability remains for allowable
expenses in excess of the limits imposed by MCL 500.3107.

2. Summary disposition was also improper because there was a factual dispute related to whether Johnson suffered a serious impairment of a body function. The trial court considered only the evidence favoring Recca's position without also considering the medical evidence tending to show that Johnson had an objectively manifested injury in the form of a herniated disk. Further inquiries into the issue must be addressed by applying the standards set forth in *McCormick v Carrier*, 487 Mich 180 (2010).

Reversed and remanded.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE BENEFITS — ALLOWABLE EXPENSES — REPLACEMENT SERVICES.

Damages for replacement services that are in excess of the daily and three-year limitations contained in MCL 500.3107(1)(c) may be recovered as allowable expenses in a third-party action brought pursuant to MCL 500.3135(3)(c).

*Skupin & Lucas, P.C.* (by *Mark E. Boegehold*), for Penny Jo Johnson.

*Garan Lucow Miller, P.C.* (by *Sarah E. Nadeau*), for John Recca.

Before: SHAPIRO, P.J., and HOEKSTRA and TALBOT, JJ.

HOEKSTRA, J. In this action for third-party benefits under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals as of right the trial court's order granting summary disposition to defendant under MCR 2.116(C)(10). We reverse and remand the case to the trial court for further proceedings.

I. BASIC FACTS AND PROCEDURAL HISTORY

In July 2004, plaintiff, a pedestrian at the time, was hit by a vehicle driven by defendant. Plaintiff was knocked backwards. She fell on her back and hit her head on the cement. At the time of the accident, plaintiff lived with Harrietta Johnson, her ex-mother-in-law. Neither woman owned a vehicle. Defendant had

a no-fault insurance policy with Allstate Property and Casualty Insurance Company.

Plaintiff sued Allstate and defendant. In the first-party claim against Allstate, plaintiff alleged that Allstate had failed to pay personal protection insurance benefits, including expenses for attendant care and replacement services. In the third-party claim against defendant, plaintiff alleged that the accident caused her to sustain a serious impairment of body function. She asserted that she suffered injuries to her lumbar, thoracic, and cervical spine, including a herniated disk[1] at L5-S1 (between the fifth lumbar and the first sacral vertebrae). She also asserted that she suffered a traumatic brain injury, which aggravated a preexisting seizure disorder. Plaintiff further claimed that defendant was required to pay her expenses for replacement services that Harrietta rendered more than three years after the date of the accident. The claims against Allstate and defendant were severed. The case against defendant was stayed, while the case against Allstate proceeded.

In the action for first-party benefits, Allstate moved for summary disposition on plaintiff's claim that she was entitled to benefits for attendant care and replacement services. The trial court granted the motion, concluding that plaintiff had failed to show that the care and services provided by Harrietta after the accident were either reasonable or necessary or that she incurred any expenses for the care and services. However, this Court reversed. *Johnson v Allstate Prop & Cas Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2010 (Docket No. 292401). It held that genuine issues of material fact existed

---

[1] We recognize that "disk" is sometime referred to in plaintiff's medical records using the commonly accepted alternate spelling "disc."

regarding how often Harrietta provided care and services to plaintiff, whether the care and services were causally connected to the injuries plaintiff suffered in the accident, whether the care and services were reasonably necessary, and whether plaintiff incurred any expenses for the care and services Harrietta rendered. *Id.* at 4-5.

Before this Court reversed the trial court's order in the first-party action, defendant moved in this case for summary disposition under MCR 2.116(C)(10) on plaintiff's claim for economic and noneconomic damages. The trial court granted the motion. First, the trial court held that expenses for replacement services were not allowable expenses because the phrase "allowable expenses" is defined in MCL 500.3107(1)(a) and expenses for replacement services are addressed in a separate subsection of the statute. Thus, it concluded that plaintiff was not entitled to excess benefits for "allowable expenses." In addition, the trial court held that, in light of its order granting summary disposition to Allstate, plaintiff was not entitled to excess benefits from defendant. It explained that because it previously held that plaintiff had failed to provide reasonable proof that any expenses for services rendered by Harrietta were reasonable and necessary, plaintiff was prevented from relitigating the issue under the doctrine of collateral estoppel.

Second, the trial court held that plaintiff was not entitled to noneconomic damages because she had not suffered a serious impairment of body function. It concluded that there was not a valid dispute about the extent of plaintiff's injuries because the medical records showed no traumatic brain injury or lasting spinal damage. The trial court also concluded that plaintiff had not suffered an impairment of a body function. It

explained that the medical records established that plaintiff suffered from a seizure disorder and degenerative back problems before the accident and that no changes were observed in medical examinations after the accident. It further concluded that even if plaintiff could show an impairment of body function, she failed to show that the impairment affected her ability to lead her normal life. The court reasoned that plaintiff was subject to significant limitations before the accident and that the quality of her life after the accident had not drastically changed.

## II. EXPENSES FOR REPLACEMENT SERVICES

On appeal, plaintiff argues that the trial court erred by holding that expenses for replacement services rendered more than three years after the date of the motor vehicle accident are not compensable damages in third-party actions.

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." We also review de novo issues of statutory interpretation. *Ward v Mich State Univ (On Remand)*, 287 Mich App 76, 79; 782 NW2d 514 (2010).

### B. APPLICABLE NO-FAULT STATUTES

With the enactment of the no-fault act, "the Legislature abolished tort liability generally in motor vehicle accident cases and replaced it with a regime that

established that a person injured in such an accident is entitled to certain economic compensation from his own insurance company regardless of fault." *Kreiner v Fischer*, 471 Mich 109, 114; 683 NW2d 611 (2004), overruled by *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010).[2] The benefits that an injured person is entitled to receive from his or her own insurance company are listed in MCL 500.3107 (§ 3107). Subsection (1) of that statute provides:

Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. Allowable expenses within personal protection insurance coverage shall not include charges for a hospital room in excess of a reasonable and customary charge for semiprivate accommodations except if the injured person requires special or intensive care, or for funeral and burial expenses in the amount set forth in the policy which shall not be less than $1,750.00 or more than $5,000.00.

(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. . . .

(c) Expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent. [MCL 500.3107(1).]

---

[2] The Supreme Court in *McCormick* overruled the *Kreiner* Court's interpretation of the definition of "serious impairment of body function" in MCL 500.3135(7). See *McCormick*, 487 Mich at 194-209.

In addition, a no-fault insurer must pay survivor's loss benefits to the dependent survivors of a deceased insured. See MCL 500.3108(1). Survivor's loss benefits, which are payable for no more than three years after the date of the accident, may not exceed $20 a day for a dependent and may not exceed a certain sum in a 30-day period. MCL 500.3108(1) and (2).

The Legislature, however, did not abolish all tort liability in motor vehicle accident cases. See MCL 500.3135(3); *Kreiner*, 471 Mich at 115. An injured person may recover certain limited economic damages from a negligent operator or owner of a motor vehicle. See MCL 500.3135(3)(c); *Kreiner*, 471 Mich at 114 n 2. MCL 500.3135(3) states:

> Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by [MCL 500.3101] was in effect is abolished except as to:
>
> *  *  *
>
> (c) Damages for allowable expenses, work loss, and survivor's loss as defined in [MCL 500.3107 to MCL 500.3110] in excess of the daily, monthly, and 3-year limitations contained in those sections.[3]

### C. ANALYSIS

The issue in the present case is whether the excess "damages for allowable expenses" that an injured per-

---

[3] In addition, MCL 500.3135(3) provides that tort liability was not abolished for intentionally caused harm, damages for noneconomic loss when the person has suffered death, serious impairment of body function, or permanent serious disfigurement, or damages up to $500 to motor vehicles if the damages are not covered by insurance. MCL 500.3135(3)(a), (b), and (d).

son may recover in a third-party action pursuant to MCL 500.3135(3)(c) include expenses for services commonly known as replacement services that are rendered more than three years after the date of the accident. Resolution of this issue requires interpretation of § 3107(1).

The goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Tevis v Amex Assurance Co*, 283 Mich App 76, 81; 770 NW2d 16 (2009). The first criterion in determining legislative intent is the language of the statute. *Id.* If the language is unambiguous, the Legislature is presumed to have intended the meaning clearly expressed, and a court must enforce the statute as written. *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 136; 761 NW2d 470 (2008). "Identical terms in different provisions of the same act should be construed identically . . . ." *Cadle Co v City of Kentwood*, 285 Mich App 240, 249; 776 NW2d 145 (2009); see also *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 434; 770 NW2d 105 (2009) ("If the statute defines a term, that definition controls."). Judicial construction of a statute is appropriate only when the language is ambiguous. *Capitol Props Group*, 283 Mich App at 434.

The Legislature defined "allowable expenses" as those expenses "consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). This definition does not specifically describe expenses for replacement services. Replacement-services expenses, however, are specifically addressed in subdivision (c) of § 3107(1). The question then is whether this separate treatment of replacement-services expenses means that replacement-services expenses are expenses separate

and distinct from allowable expenses or whether they are merely a category of allowable expenses.

As just stated, allowable expenses are those expenses "consisting of all reasonable charges incurred for reasonably necessary products, *services* and accommodations for an injured person's *care*, recovery, or rehabilitation." MCL 500.3107(1)(a) (emphasis added). In *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 534-535; 697 NW2d 895 (2005), the Supreme Court stated that the terms "recovery" and "rehabilitation" referred to restoring an injured person to the condition he or she was in before sustaining the injuries. Then, recognizing that the term "care" must have a meaning broader than "recovery" and "rehabilitation," and yet not so broad as to render those terms nugatory, the *Griffith* Court held that "care" referred to "those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident." *Id.* at 535. It explained that " '[c]are' is broader than 'recovery' and 'rehabilitation' because it may encompass expenses for products, services, and accommodations that are necessary because of the accident but that may not restore a person to his preinjury state." *Id.*

Considered within the definition of "care" in § 3107(1)(a) provided by the Supreme Court in *Griffith*, replacement services are services for the "care" of an injured person. Replacement services are those services performed by another that the injured person would have performed for his or her benefit or the benefit of dependents had the person not been injured. MCL 500.3107(1)(c). Consequently, replacement services are services that are needed as the result of an injury sustained in the motor vehicle accident. See *Griffith*, 472 Mich at 535. For example, in this case, plaintiff

claims that before the accident she prepared her own meals, but since the accident and because of the back injury she sustained in the accident, she is no longer able to cook and Harrietta does so for her. If a person injured in a motor vehicle accident cooked his or her food before being injured, but because of the injury sustained is no longer able to cook, any expense incurred in paying someone to cook for him or her is a replacement-service expense. But the expense is also conceptually an "allowable expense" because the cooking service is "care" as defined in *Griffith*; it was necessitated by the injury sustained in the accident. Because replacement services are services for the "care" of an injured person, we conclude that replacement-services expenses are not separate and distinct from allowable expenses; rather, they are merely one category of allowable expenses.

A question remains, however, concerning why the Legislature separately addressed replacement-services expenses in § 3107(1)(c). The answer, we believe, is that the Legislature included subdivision (c) in § 3107(1) to place limits on the amount of expenses for replacement services that a no-fault insurer must pay. MCL 500.3107(1)(a) contains no daily or yearly limits on the amount of allowable expenses that a no-fault insurer is required to pay. But a no-fault insurer is only required to pay $20 a day for replacement services for those services performed in the first three years after the date of the accident. MCL 500.3107(1)(c). Also, this explanation of the Legislature's decision to include subdivision (c) in § 3107(1) is consistent with the fact that the expenses in the subdivision are not labeled "replacement services expenses." Rather, subdivision (c) only refers to "[e]xpenses" and then describes services that have become known as replacement services. Because the expenses are not specifically named, it is reasonable

to conclude that the expenses are simply one category of allowable expenses that are subject to a limit on recovery that is not applicable to other allowable expenses.

Our conclusion that replacement-services expenses are a category of allowable expenses is also supported by the inclusion of the phrase "allowable expenses, work loss, and survivor's loss" in four provisions of the no-fault act. See MCL 500.3110(4); MCL 500.3116(4); MCL 500.3135(3)(c); MCL 500.3145(1).[4] These provisions contain general rules regarding the recovery of economic losses. For example, MCL 500.3110(4) provides that "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred." If replacement-services expenses are a category of allowable expenses, then the phrase "allowable expenses, work loss, and survivor's loss" refers to all economic losses for which the no-fault act permits recovery. We find nothing in the language of the no-fault act to suggest an intent by the Legislature to exclude replacement-services expenses from general rules applying to the recovery of economic losses.[5]

---

[4] The only other provision in the no-fault act in which the term "allowable expenses" appears is § 3107.

[5] We note that our conclusion also agrees with how our Supreme Court and this Court have viewed the allowable expenses that are recoverable in third-party actions. In *Kreiner*, 471 Mich at 114 n 2, the Supreme Court wrote: "An injured person may file a tort claim against the party at fault seeking to recover *excess* economic losses (wage losses and replacement expenses beyond the daily, monthly, and yearly maximum amounts). MCL 500.3135(3)(c)." (Emphasis in original.) In addition, in *Swantek v Auto Club of Mich Ins Group*, 118 Mich App 807, 809; 325 NW2d 588 (1982), this Court stated, "The right of action against the tortfeasor for excess economic loss exists in all categories in which the insurer's liability is limited by the statute: work loss, funeral cost, and replacement services."

In addition, the model civil jury instruction on economic loss in an action for third-party benefits, M Civ JI 36.06, states that the plaintiff has the

In conclusion, because replacement-services expenses are "allowable expenses," and because MCL 500.3135(3)(c) did not abolish tort liability for "[d]amages for allowable expenses . . . in excess of the daily, monthly, and 3-year limitations contained in [MCL 500.3107 to 500.3110]," we hold that damages for replacement-services expenses that are in excess of the daily and three-year limitations contained in MCL 500.3107(1)(c) may be recovered in a third-party action. Accordingly, we reverse the trial court's order granting defendant summary disposition on plaintiff's claim for excess replacement-services expenses.[6]

### III. SERIOUS IMPAIRMENT OF BODY FUNCTION

Plaintiff also argues on appeal that the trial court erred by granting summary disposition on her claim that she suffered a serious impairment of body function.

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1).

---

burden of proving sustained damages and the trial court is instructed to "insert those applicable economic loss damages suffered by the plaintiff in excess of compensable no-fault benefits for which plaintiff seeks recovery— e.g., work loss during the first three years in excess of no-fault benefits, all work loss beyond three years, excess replacement service expenses, etc."

[6] In their respective briefs on appeal, the parties dispute the effect the trial court's order granting summary disposition to Allstate on plaintiff's first-party claim for expenses for replacement services has on plaintiff's third-party claim. Because this Court reversed the trial court's order and it is unknown whether plaintiff is entitled to benefits from Allstate for replacement services rendered within three years of the date of the accident, we decline to address whether plaintiff can recover excess benefits from defendant if she is not entitled to collect benefits from Allstate. The underlying factual basis of the parties' controversy does not currently exist, and it may never exist again.

The Legislature defined a "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7). Three prongs must be met to establish the threshold injury: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195. In *McCormick*, our Supreme Court held that it had previously incorrectly interpreted MCL 500.3135(7) and established new standards for determining whether a person has suffered a serious impairment of body function. *Id.* at 214-216.

Plaintiff claims that the trial court erred by determining as a matter of law that she had not suffered a serious impairment of body function because there was a factual dispute concerning the nature and extent of the injuries she suffered to her lumbar spine in the motor vehicle accident.[7]

Whether a person has suffered a serious impairment of body function is a question of law for the court if the court finds that (1) there is no factual dispute about the nature and extent of the injuries or (2) if there is a factual dispute, the dispute is not material to the determination whether the person suffered a serious impairment of body function. MCL 500.3135(2)(a); *McCormick*, 487 Mich at 192-194. A material dispute is one that is " 'significant or essential to the issue or matter at hand' "; it need not be outcome determinative. *McCormick*, 487 Mich at 194, quoting Black's Law Dictionary (8th ed).[8]

---

[7] Plaintiff has abandoned any claims that as a result of the accident she suffered a brain injury, that her seizure disorder was aggravated, or that she sustained impairments to her cervical or thoracic spine.

[8] The Court in *McCormick* stated that its reading of MCL 500.3135(2) was "not necessarily inconsistent" with the *Kreiner* Court's interpretation the statute's plain language. *McCormick*, 487 Mich at 194 n 8.

After reviewing plaintiff's medical records, we conclude there was a dispute concerning whether plaintiff's injuries from the motor vehicle accident included a herniated disk at L5-S1. According to two MRIs, plaintiff suffered a herniated disk. A June 2005 MRI revealed "a moderate sized broad based central disc herniation" at L5-S1. In addition, an August 2006 MRI showed "a right paracentral disk herniation" at L5-S1. Although plaintiff suffered from back problems before the motor vehicle accident, the scans and x-rays taken of plaintiff's back before the accident showed only degenerative changes; they did not reveal a herniated disk. Dr. James Whelan, plaintiff's primary-care physician, stated that plaintiff's October 2006 surgery was necessitated by injuries sustained in the accident.

However, other medical records indicated that plaintiff did not suffer a herniated disk. In a September 2006 office note, Dr. Farook Kidwai, the surgeon who performed plaintiff's surgery, wrote that he had reviewed an MRI of plaintiff's lumbosacral spine and it revealed a "bulging of the disc" at L5-S1. Kidwai also wrote that he told plaintiff that any surgery would involve decompression. In addition, in his surgical report, Kidwai stated that there were "severe degenerative changes" and a "considerable bulging of the disc at L5-S1." Kidwai's report made no mention of a herniated disk. Further, Dr. William Boike, who performed an independent medical evaluation of plaintiff, concluded after reviewing the August 2006 MRI and Kudwai's surgical report that plaintiff did not have a herniated disk.[9]

In determining that there was no valid dispute about the nature and extent of the injuries plaintiff sustained

[9] Whether plaintiff had a herniated disk or a bulging disk is relevant because Boike testified that a bulging disk is not a traumatic injury and that it would not have been caused by a motor vehicle accident.

in the motor vehicle accident, the trial court failed to acknowledge the two MRIs that showed that plaintiff had a herniated disk at L5-S1. It did so even after defense counsel stated at the hearing on the motion for summary disposition that there was a dispute regarding whether plaintiff actually had a herniated disk. Because the trial court failed to account for the evidence suggesting that plaintiff suffered an objectively manifested injury, we reverse the trial court's order granting summary disposition to defendant on plaintiff's claim that she suffered a serious impairment of body function. All further inquiries into whether plaintiff suffered a threshold injury must be answered using the new standards announced by the Supreme Court in *McCormick*.[10]

Reversed and remanded for further proceedings.

SHAPIRO, P.J., and TALBOT, J., concurred with HOEKSTRA, J.

---

[10] Both parties have filed supplemental briefing regarding *McCormick*. However, any application of the standards announced in *McCormick* should first be undertaken by the trial court.