# STATE OF MICHIGAN

# COURT OF APPEALS

---

IRWIN H. ESTRINE, D.O., and SEEMA
ESTRINE,

        Plaintiffs-Appellants,

v

VHS HURON VALLEY-SINAI HOSPITAL,
INC., d/b/a HURON VALLEY-SINAI
HOSPITAL, and ANTHONY L. JOSEPH, M.D.,

        Defendants,

and

MILES L. SINGER, D.O., and MILES L.
SINGER, D.O., PLLC,

        Defendants-Appellees,

UNPUBLISHED
December 29, 2016

No. 327870
Oakland Circuit Court
LC No. 2012-129599-NH

---

Before: GADOLA, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Plaintiffs, Irwin H. Estrine, D.O., and his wife, Seema Estrine, appeal as of right a judgment of no cause for action entered after a jury trial resulting in a verdict that defendant Dr. Miles L. Singer, D.O., was not professionally negligent.[1] We affirm.

## I. FACTUAL BACKGROUND

This appeal arises out of a medical malpractice action in which plaintiffs alleged that defendant Dr. Singer committed malpractice relating to plaintiff's spinal surgery. Plaintiffs' amended complaint alleged that Dr. Singer performed a "tubular dilation microdis[c]ectomy" on April 3, 2010. Immediately following the surgery, plaintiff began experiencing intense pain in

---

[1] Because plaintiff Seema only alleged derivative claims based on plaintiff Irwin's injuries, we will refer to Irwin, individually, as "plaintiff" in this opinion.

his right lower extremity as well as less intense pain in his left lower extremity. Plaintiff alleged that his complaints of pain continued on April 4, 2010, and April 5, 2010, and that Dr. Singer ultimately ordered an MRI late in the day on April 5, 2010. The MRI revealed an "extensive epidural hematoma . . . with cord compression" along with an "extruded herniated disk" that was compressing a nerve root. Plaintiffs alleged that Dr. Singer performed a second surgery on April 6, 2010, in order to "evacuate the hematoma." The amended complaint alleged that plaintiff continued to experience severe pain in his lower extremities after he was discharged from his second surgery, and that he required additional surgeries by another physician in November 2010 and January 2012. As a result, plaintiffs alleged that Dr. Singer committed medical malpractice by using an improper technique during the original surgery and by failing to properly recognize and treat plaintiff's post-surgical symptoms. Plaintiff Seema also asserted a claim for financial losses related to her care of plaintiff and a loss of consortium claim.

Most relevant to this appeal, Dr. Singer filed a motion in limine to preclude the admission of evidence and testimony regarding billing and record errors. He argued that plaintiff's Medicare Explanation of Benefits contained a number of errors, and that the billing errors were irrelevant to whether his performance of plaintiff's spinal surgery violated the applicable standard of care. Plaintiff also filed a motion in limine to preclude the admission of evidence concerning his prior abuse of opioid medication, arguing that evidence of his prior opioid use was irrelevant to the medical malpractice allegations in this case.

The trial court granted in part and denied in part Dr. Singer's motion to exclude evidence of billing errors, allowing the evidence to be admitted under MRE 608—only as it related to Dr. Singer's truthfulness—if he introduced evidence that his records were complete and accurate. Additionally, the trial court denied plaintiffs' motion to exclude evidence of Dr. Estrine's past opioid abuse, adopting the arguments raised by defendants in opposition to plaintiffs' motion and also noting that evidence regarding plaintiff's opioid use was relevant to plaintiff's credibility, which "always may be attacked."

On the morning of the first day of trial, plaintiffs filed a motion to voluntarily dismiss plaintiff Seema's claims. Defendants objected, noting that both plaintiffs had rejected the case evaluation award, and if the jury returned a verdict in favor of the defense, defendants would be entitled to seek case evaluation sanctions against both plaintiffs. As discussed further below, the trial court ultimately denied plaintiff's motion.

Following an eight-day trial, the jury found that Dr. Singer was not professionally negligent in his treatment of plaintiff.

## II. EVIDENTIARY CLAIMS

### A. STANDARD OF REVIEW AND APPLICABLE LAW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion," which "occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Preliminary questions of law regarding the admissibility of evidence are reviewed *de novo*. *Omian v Chrysler Group LLC*, 309 Mich App 297, 306-307; 869 NW2d 625 (2015). "Error warranting

reversal may not be predicated on an evidentiary ruling unless a substantial right is affected."
*Shaw v Ecorse*, 283 Mich App 1, 27; 770 NW2d 31 (2009).

> Generally, all relevant evidence is admissible and irrelevant evidence is not. MRE 402; *Waknin v Chamberlain,* 467 Mich 329, 333; 653 NW2d 176 (2002). Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401; *Waknin, supra* at 333. The trial court also has discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403; *Lewis, supra* at 199. " 'Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.' " *Waknin, supra* at 334 n 3, quoting *People v Crawford,* 458 Mich 376, 398; 582 NW2d 785 (1998). [*Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 729-730; 761 NW2d 454 (2008).]

### B. EVIDENCE CONCERNING PAST OPIOID USE

Plaintiff argues that the trial court erred by concluding that evidence related to his past use of opioid medication was admissible. We disagree.

As demonstrated by the framing of this issue in their statement of the questions presented, plaintiffs primarily focus on the trial court's admission of this evidence based on its conclusion that the evidence was relevant to plaintiff's credibility. In so arguing, plaintiffs fail to recognize that the trial court also ruled that evidence related to plaintiff's opioid use was admissible for all of the reasons identified by defendants in the trial court, *i.e.*, its relevance to plaintiff's credibility as well as its relevance to defendants' claims concerning plaintiff's comparative negligence in this case and defendants' refutation of plaintiff's claim of injury based on the excruciating pain that he experienced due to Dr. Singer's alleged negligence.[2] As such, the trial court properly admitted this evidence.

Plaintiffs alleged that Dr. Singer negligently performed back surgery that resulted in the destabilization of his spine, the formation of an abnormally large hematoma at the surgical site, and excruciating pain. Dr. Singer denied that he was negligent and argued that plaintiff's past opioid abuse made him hypersensitive to pain. Accordingly, whether the ongoing, excruciating pain that plaintiff sustained was proximately caused by Dr. Singer's purported negligence—or, instead, was related to plaintiff's drug-seeking behaviors and lack of sensitivity to pain relievers—was a primary issue in this case. See *Kalaj v Khan*, 295 Mich App 420, 429; 820

---

[2] In his reply brief on appeal, plaintiff expressly recognizes that an "actual injury" in this case was his physical pain. See also *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 61-62; 631 NW2d 686 (2001) (implicitly recognizing that "pain and suffering attributable to an unnecessarily worsened physical condition" constitutes an injury for purposes of a medical malpractice case).

NW2d 223 (2012) ("To establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care."), citing *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). As a result, direct evidence on those issues was highly relevant.[3] See *Morales*, 279 Mich App at 729-730. Moreover, given the centrality of these questions to plaintiff's medical malpractice claim, it does not appear that the evidence concerning plaintiff's opioid use was more prejudicial than probative such that it should have been excluded under MRE 403. See *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003) (describing when evidence is unfairly prejudicial). Further, even if the trial court did err, the admission of this evidence was harmless given the fact that the jury found that Dr. Singer was not professionally negligent and, therefore, did not reach the elements requiring consideration of the cause or extent of plaintiff's pain. See *Elher v Misra*, 499 Mich 11, 21-22; 878 NW2d 790 (2016).

For all of these reasons, we need not consider whether this evidence was also admissible based on its relevance to plaintiff's credibility. However, even if we assume, arguendo, that the trial court erred in finding that the evidence was admissible for this purpose,[4] we will not reverse a trial court's ruling when it came to the right result for the wrong reason. *Gleason v Michigan Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Likewise, even if we assume that the trial court erred in holding that evidence of plaintiff's past opioid abuse was relevant and admissible for the purpose of determining plaintiff's comparative negligence,[5] such an error was harmless because the jury did not reach the question of comparative negligence given the fact

---

[3] Plaintiffs claim that evidence on this issue was "inconsequential" in light of M Civ JI 50.10, a jury instruction on the "basic tort rule of law [that] a tortfeasor takes his victim as he finds him." *Richman v Berkley*, 84 Mich App 258, 261; 269 NW2d 555 (1978). See also *Pierce v Gen Motors Corp*, 443 Mich 137, 155-156; 504 NW2d 648 (1993) (discussing "the example of the man with the eggshell skull") (quotation marks and citation omitted). Notably, M Civ JI 50.10 relates to damages, see *Wincher v City of Detroit*, 144 Mich App 448, 456; 376 NW2d 125 (1985), and a jury need only consider damages after it decides whether the defendant was professionally negligent and whether the victim's injuries were proximately caused by that negligence, see *Put v FKI Indus, Inc*, 222 Mich App 565, 570-571; 564 NW2d 184 (1997). Evidence concerning plaintiff's prior opioid use was relevant to the issue of proximate cause, *i.e.*, whether the pain at issue here was proximately caused by Dr. Singer's negligence. Thus, evidence of plaintiff's prior drug use was not "inconsequential."

[4] Compare MRE 608; MRE 611(C); *In re Dearmon*, 303 Mich App 684, 696-697; 847 NW2d 514 (2014); *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 653; 705 NW2d 549 (2005).

[5] See MCL 600.6304(1); *Estate of Shinholster v Annapolis Hosp*, 471 Mich 540, 551, 572-573; 685 NW2d 275 (2004); *Taylor v Kent Radiology, PC*, 286 Mich App 490, 515-516, 517 n 4; 780 NW2d 900 (2009).

that it found that Dr. Singer was not negligent in his treatment of plaintiff. See *Ferguson v Delaware Int'l Speedway*, 164 Mich App 283, 293; 416 NW2d 415 (1987) (holding that any error as to a comparative negligence instruction was harmless because the jury concluded that the defendant was not negligent).

Plaintiffs have failed to establish any error requiring reversal based on the trial court's admission of evidence concerning plaintiff's opioid use.

### C.  EVIDENCE REGARDING MEDICARE BILLING

Next, plaintiffs argue that the trial court abused its discretion by precluding the admission, for impeachment purposes, of evidence that Dr. Singer billed Medicare for a surgical procedure that he did not perform. We disagree.

Plaintiffs claim that this evidence was relevant for two reasons. First, they argue that it was relevant to show (1) that Dr. Singer was inattentive or confused, and (2) that if he erred in billing for his services, he could have erred in performing the surgery at issue. Plaintiffs also argue that the presence of the billing error was relevant to Dr. Singer's credibility.

The trial court did not abuse its discretion by holding that plaintiffs could not present evidence of the billing error unless Dr. Singer presented evidence that his records were complete and accurate. First, we agree with the trial court that a billing error was not relevant to plaintiffs' remaining claims at trial, *i.e.*, that they incurred damages as a result of Dr. Singer's breach of the appropriate standard of care. See *Kalaj*, 295 Mich App at 429. Contrary to plaintiffs' creative arguments, the presence or absence of a billing error did not make it more or less probable that Dr. Singer committed medical malpractice during the surgeries and treatment at issue in this case. See MRE 401; MRE 402; *Morales*, 279 Mich App at 729-730.

Moreover, a witness cannot be impeached on a collateral matter. *Lagalo v Allied Corp (On Remand)*, 233 Mich App 514, 518; 592 NW2d 786 (1999). A billing error in Dr. Singer's records was a collateral matter because it was not related to the claim at issue at trial, *i.e.*, whether Dr. Singer committed medical malpractice during his treatment of plaintiff's back problems. Further, extrinsic evidence cannot be used to prove a specific incident of conduct for the purpose of attacking the credibility of a witness. MRE 608(b); *Lagalo*, 233 Mich App at 518.

Thus, the trial court's exclusion of extrinsic evidence on this issue was not outside the range of principled outcomes. See *Edry*, 486 Mich at 639.[6]

### III.  VOLUNTARY DISMISSAL OF PLAINTIFF SEEMA'S CLAIMS

---

[6] We note that plaintiffs' counsel was afforded the opportunity to extensively cross-examine Dr. Singer at trial regarding whether his documentation related to the surgery and the related billing records indicate that he performed a procedure that he did not actually perform.

Lastly, plaintiffs argue that the trial court abused its discretion when it denied their motion to voluntarily dismiss plaintiff Seema's claims on the first day of trial. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's grant or denial of a motion for voluntary dismissal under MCR 2.504 for an abuse of discretion. *McKelvie v City of Mt Clemens*, 193 Mich App 81, 86; 483 NW2d 442 (1992); *Mleczko v Stan's Trucking, Inc*, 193 Mich App 154, 155; 484 NW2d 5 (1992). "This Court will not set aside the grant or denial of a voluntary dismissal unless the circuit court's action was without justification." *McKelvie*, 193 Mich App at 86. See also *Mleczko*, 193 Mich App at 155.

## B. ANALYSIS

"Under MCR 2.504(A)(2), an action may not be dismissed at the plaintiff's request except by order of the court on terms and conditions the court deems proper." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 570; 525 NW2d 489 (1994). In considering a motion requesting voluntary dismissal of a claim, "the trial judge is to weigh the competing interests of the parties along with any resultant inconvenience to the court from further delays." *African Methodist Episcopal Church v Shoulders*, 38 Mich App 210, 212; 196 NW2d 16 (1972) (discussing GCR 1963, 504.1(2), a prior version of MCR 2.504). "Normally, such a motion should be granted unless defendant will be legally prejudiced as a result." *Id*. "As the purpose of [the voluntary dismissal court rule] is to protect defendant from the abusive practice of dismissal after much time and effort has been put into a lawsuit, any dismissal should be on terms and conditions which protect [d]efendant." *Id*. A defendant may face "legal prejudice" in situations where there is excessive delay and lack of diligence by the plaintiff in prosecuting an action. *Grover by Grover v Eli Lilly & Co*, 33 F3d 716, 718 (CA 6, 1994).[7]

Plaintiffs argue that the trial court abused its discretion when it denied their motion to dismiss plaintiff Seema's claims because the court did not weigh the competing interests of the parties and any inconvenience to the court. This argument has no merit given the trial court's questions and discussion with the parties on the record before it made its ruling, which reveal that it considered both parties' interests.

Plaintiffs also assert that the trial court improperly required that they accept defendants' settlement offer as a condition for granting the motion because plaintiff Seema's claim was entirely separate from plaintiff's principal claim. We disagree. First, although the court mentioned defendants' settlement offer during its discussion with the parties, the trial court did not ultimately hold that plaintiffs were permitted to voluntarily dismiss plaintiff Seema's claims as long as they accepted defendants' proposed settlement. Rather, following its discussion on the record, the court denied plaintiffs' motion without any conditions.

---

[7] This Court has considered federal opinions for guidance in interpreting the court rule governing voluntary dismissals. See, e.g., *Bruce v Grace Hosp*, 96 Mich App 627, 630-631; 293 NW2d 654 (1980) (interpreting GCR 1963, 504.1(2)).

The trial court's ruling was not an abuse of discretion. Plaintiffs' motion was not filed until April 20, 2015, the first day of trial, even though the specific basis for plaintiffs' motion was the fact that plaintiff Seema stated at a deposition on September 20, 2013, that her marriage had not been damaged as a result of the allegedly negligent surgery. Accordingly, it is clear that plaintiffs had been aware for more than a year that plaintiff Seema would not prevail at trial, yet they continued to pursue her claims until the time at which defendants' trial preparations were necessarily complete. As such, we conclude that defendants would have faced prejudice, given plaintiffs' delay and lack of due diligence, had the trial court granted plaintiffs' motion to voluntarily dismiss the claims at that point in the proceedings. See *African Methodist Episcopal Church*, 38 Mich App at 212; *Grover*, 33 F3d at 718.

In addition, both plaintiffs rejected the case evaluation award in August 2014 even though, again, plaintiff Seema effectively acknowledged that her claims lacked merit approximately one year before the case evaluation proceedings. "The purpose of case evaluation sanctions is to shift the financial burden of trial onto the party who demands a trial by rejecting a proposed case evaluation award." *Tevis v Amex Assurance Co*, 283 Mich App 76, 86; 770 NW2d 16 (2009). As defendants argued, dismissal of plaintiff Seema's claims would have prejudiced defendants by affecting the amount of case evaluation sanctions to which they were entitled, or which they could recover, upon securing a verdict in their favor. See MCR 2.403(O).

Under these circumstances, the trial court's denial of the motion to dismiss plaintiff Seema's claims was not without justification. See *Mleczko*, 193 Mich App at 155; *McKelvie*, 193 Mich App at 86.

## IV. CONCLUSION

Plaintiffs have failed to establish that any of their claims on appeal warrant relief.

Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs under MCR 7.219.

/s/ Michael F. Gadola
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan