638 N.W.2d 155 (2001)
248 Mich. App. 35
LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff-Counterdefendant-Appellant,
v.
MICHIGAN CATASTROPHIC CLAIMS ASSOCIATION, Defendant-Counterplaintiff-Appellee.
Docket No. 220168.
Court of Appeals of Michigan.
Submitted May 16, 2001, at Detroit.
Decided October 26, 2001, at 9:00 a.m.
Released for Publication January 10, 2002.
*156 Garan, Lucow, Miller, P.C. (by Daniel S. Saylor and James L. Borin), Detroit, for the plaintiff.
Dykema Gossett PLLC (by Ronald J. Torbert), Detroit, for the defendant.
Before NEFF, P.J., and FITZGERALD and MARKEY, JJ.
MARKEY, J.
Plaintiff-counterdefendant Liberty Mutual Insurance Company appeals by right the trial court's order granting defendant-counter plaintiff Michigan Catastrophic Claims Association's (MCCA) motion for summary disposition under MCR 2.116(C)(10). The issue before this Court is whether the MCCA is required to accept plaintiff's postloss premium payment and reimburse plaintiff for a loss sustained under personal protection insurance coverage in excess of $250,000 pursuant to M.C.L. § 500.3104(2) of the no-fault act. We conclude that the MCCA is not required to reimburse plaintiff, and affirm the trial court's order granting summary disposition in favor of the MCCA.

I. FACTS
The parties do not dispute the facts in this case. In March 1992, plaintiff issued a California automobile insurance policy to California residents Larry and Elaine DeGrave to insure their two vehicles registered in California, including a 1980 Datsun. In July 1992, the DeGraves drove from California to Michigan. They arrived in Michigan on July 17 and stayed for more than thirty days without registering their vehicle in Michigan or acquiring Michigan no-fault insurance, contrary to M.C.L. § 500.3102(1), which requires nonresidents operating automobiles in Michigan for longer than thirty days to maintain security for the payment of Michigan no-fault benefits. On September 14, 1992, the DeGraves son, Eric, was driving the Datsun when he hit Michael Lanaville, an uninsured motorcyclist, rendering Lanaville a paraplegic. Since the accident, plaintiff has paid Lanaville's personal protection insurance (PIP) benefits, which have exceeded $250,000.
In September 1996, plaintiff sued the DeGraves to reform their California policy into a Michigan no-fault policy that provided security for payment of benefits as required by M.C.L. § 500.310(1),[1] retroactively effective to August 1992 (shortly after the DeGraves' thirty days of coverage in Michigan under their California policy ended and before the accident). A consent judgment was entered on August 1, 1997, in which plaintiff and the DeGraves agreed that plaintiff would reissue their California policy as a Michigan no-fault policy providing six months of coverage from August 1992 until March 1993, the expiration date of the original California *157 policy. In November 1997, more than five years after the accident in this case, plaintiff tendered a premium payment as required by M.C.L. § 500.3104 to the MCCA to cover the DeGraves' two automobiles under their newly reformed insurance policy. Plaintiff then asked the MCCA for reimbursement of PIP benefits exceeding $250,000 owed to Lanaville under the policy. The MCCA rejected the proffered premium payment, stating that the reformed policy did not obligate the MCCA to indemnify plaintiff under M.C.L. § 500.3104. The MCCA stated that any PIP benefits that plaintiff paid under the policy were paid pursuant to M.C.L. § 500.3163, which obligated plaintiff to pay PIP benefits under policies issued outside Michigan under circumstances such as those involved in this case.
Plaintiff subsequently commenced this lawsuit seeking a declaration that the MCCA was obligated under M.C.L. § 500.3104 to reimburse plaintiff for payment of PIP benefits in excess of $250,000 to Lanaville. The MCCA counterclaimed, seeking a declaration that plaintiff is not entitled to reimbursement under M.C.L. § 500.3104. On May 5, 1999, the trial court granted the MCCA's motion for summary disposition after concluding that the MCCA did not have to indemnify plaintiff under the instant circumstances. Relying on In re Certified Question (Preferred Risk Mut. Ins. Co. v. Michigan Catastrophic Claims Ass'n), 433 Mich. 710, 449 N.W.2d 660 (1989), and Travelers Ins. Co. v. Michigan Catastrophic Claims Ass'n, unpublished opinion per curiam of the Court of Appeals, issued June 13, 1995 (Docket No. 156716), the trial court concluded that the MCCA is not required to reimburse under policies issued to nonresidents that are not in compliance with Michigan law. The court concluded that the DeGraves were California residents and that the insurance policy in effect at the time of the accident was a California policy. The court opined that notwithstanding the reformation of the policy, to rule in favor of plaintiff would be a signal to other members who pay MCCA premiums that if the situation arose where payment was based on an out-of-state policy, the member could merely reform the policy and predate the dates of coverage so the policy could then comply with M.C.L. § 500.3102(1). The court concluded that to so allow would undermine the purpose and intent of the statute. Plaintiff now appeals by right.

II. ANALYSIS
Plaintiff asserts that the trial court erred in granting summary disposition to the MCCA because the reformation of the DeGraves' California insurance policy into a Michigan policy complying with Michigan no-fault law required the MCCA to reimburse plaintiff for payments made that exceeded $250,000. We disagree. A trial court's grant or denial of summary disposition under MCR 2.116(C)(10) is reviewed de novo on appeal. Spiek v. Dep't of Transportation, 456 Mich. 331, 337, 572 N.W.2d 201 (1998). Statutory interpretation is a question of law that is also reviewed de novo. Consumers Power Co. v. Dep't of Treasury, 235 Mich.App. 380, 384, 597 N.W.2d 274 (1999).
Owners of motor vehicles required to be registered in Michigan must maintain security for payment of no-fault benefits pursuant to M.C.L. § 500.3101(1). In addition, M.C.L. § 500.3102(1) provides that nonresident owners whose automobiles are not registered in Michigan but are driven or permitted to be driven for more than thirty days in Michigan must also maintain security for payment of no-fault benefits. Under M.C.L. § 500.3163(1), insurers authorized to transact PIP insurance in Michigan (which includes plaintiff) are required *158 to pay Michigan PIP benefits to their out-of-state resident insureds in the event of a motor vehicle accident occurring in Michigan. MCL 500.3163(1) provides:
An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system as set forth in this act.
The MCCA was created by M.C.L. § 500.3104 to indemnify member insurers for single claims exceeding $250,000 made on Michigan policies where a premium is assessed for the claim and security is maintained by the insured. MCL 500.3104 provides in relevant part:
(1) An unincorporated, nonprofit association to be known as the catastrophic claims association, hereinafter referred to as the association, is created. Each insurer engaged in writing insurance coverages which provide the security required by section 3101(1) within this state, as a condition of its authority to transact insurance in this state, shall be a member of the association and shall be bound by the plan of operation of the association....
(2) The association shall provide and each member shall accept indemnification for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of $250,000.00 in each loss occurrence....
However, not every insurer who pays PIP benefits in excess of $250,000 under the no-fault act is entitled to indemnification. Preferred Risk, supra at 725, 449 N.W.2d 660. The MCCA's obligation to indemnify is limited to those insurers who provide the coverage required by M.C.L. § 500.3101(1). Preferred Risk, supra at 714-715, 449 N.W.2d 660.
Premium payments required for membership in the MCCA are determined by M.C.L. § 500.3104(7)(d), which provides in relevant part:
Each member shall be charged an amount equal to that member's total earned car years of insurance providing the security required by section 3101(1) or 3103(1), or both, written in this state during the period to which the premium applies, multiplied by the average premium per car. The average premium per car shall be the total premium calculated divided by the total earned car years of insurance providing the security required by section 3101(1) or 3103(1) written in this state of all members during the period to which the premium applies.
Pursuant to subsections 3101(1) and 3102(1), the DeGraves were required to obtain security for payment of Michigan no-fault benefits after they had been in Michigan for more than thirty days, i.e., by August 16, 1992, but they failed to do so. Further, plaintiff admittedly did not pay a premium to the MCCA for the DeGraves' policy until October 17, 1997, more than five years after the DeGraves were required to comply with subsections 3101(1) and 3102(1).
In holding that plaintiff was not entitled to reimbursement from the MCCA, the trial court relied on two Michigan cases, Preferred Risk, supra, and Travelers Ins., supra, which indicate that an insured's failure to obtain security and an insurer's failure to pay the premium as required by Michigan no-fault law prevent an insurer from being indemnified by the MCCA. In *159 Preferred Risk, supra at 727-728, 449 N.W.2d 660, our Supreme Court stated that the MCCA can refuse to indemnify claims paid under M.C.L. § 500.3163. The plaintiff insurer in Preferred Risk paid no-fault benefits on an Illinois insurance policy exceeding $250,000 to an Illinois resident who was injured in an automobile accident in Michigan. A Michigan resident owned and insured the vehicle involved. Preferred Risk, supra at 716, 449 N.W.2d 660. The parties agreed that the plaintiff was required to pay benefits to its insured under M.C.L. § 500.3163, and the plaintiff paid more than $250,000 to the claimant before seeking indemnification from the MCCA under M.C.L. § 500.3104. Preferred Risk, supra at 716-717, 449 N.W.2d 660. The Court found that because benefits were paid under M.C.L. § 500.3163 and not M.C.L. § 500.3101, the plaintiff was not entitled to indemnification from the MCCA. Preferred Risk, supra at 727-728, 449 N.W.2d 660.
Six years later, in Travelers Ins., supra, this Court held that the MCCA will not indemnify insurers for benefits paid under M.C.L. § 500.3163 to nonresidents. The insured in Travelers was a Michigan resident who moved to Pennsylvania in July 1989, obtained a Pennsylvania driver's license, purchased and registered a truck in Pennsylvania, and purchased a Pennsylvania insurance policy. Travelers, supra. About October 1, 1989, the insured returned to Michigan and stayed more than thirty days without informing his insurer, obtaining a Michigan driver's license, or registering the truck in Michigan. Id. The insured was in an accident on December 9, 1989, and his passenger was injured. Id. The insured's insurer, Travelers, paid benefits to the passenger but was unsuccessful in its attempt for indemnification from the MCCA. Id.
This Court, like the Supreme Court in Preferred Risk, recognized that insurers who pay benefits to out-of-state residents under M.C.L. § 500.3163 are not entitled to reimbursement from the MCCA where the insureds do not provide security as required by M.C.L. § 500.3101 and the insurers have not paid a premium to the MCCA under M.C.L. § 500.3104. However, the Court suggested that if the insurance policy had been reformed to provide the coverage required of a Michigan resident, then payments would be made as if a Michigan policy had been issued. Plaintiff here relies on this Court's statement in Travelers regarding reformation and retroactivity to support its claim that an insurance policy can be reformed retroactively to comply with M.C.L. § 500.3101 and that after the assessment is paid, the MCCA is required to indemnify. We disagree with plaintiff's assertion. First, we note that Travelers is an unpublished opinion that is not precedentially binding on this Court. MCR 7.215(C)(1); Walker v. Dep't of Social Services, 149 Mich.App. 436, 442, 386 N.W.2d 205 (1986), aff'd. 428 Mich. 389, 410 N.W.2d 698 (1987). In addition, the discussion in Travelers regarding reformation and retroactivity was dictum, thereby making plaintiff's argument one that is based on unpublished dictum. Discussion of a principle of law not essential to the determination of a case is "`obiter dictum'" and is "without the `force of an adjudication.'" Reynolds v. Bureau of State Lottery, 240 Mich.App. 84, 95, 610 N.W.2d 597 (2000), quoting Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 597-598, 374 N.W.2d 905 (1985).
Regarding the statement in Travelers, supra, that noted that "the policy could be reformed to provide the coverage required of a Michigan resident and payments would be made as if a Michigan policy had been issued," we conclude that the Court was simply indicating that once there was *160 a change in the residency of an insured, the insurer could reform the contract to comply with the coverage requirements of M.C.L. § 500.3101. Not only is that action clearly being allowed, the insured is in fact required to obtain such coverage after thirty days in Michigan. The Travelers panel did not say anything that would allow the conclusion that the reformation could be made retroactively five years after the change in the residency status of an insured as plaintiff in the present case sought to do.
However, in Travelers, supra, the Court also noted that Travelers' normal procedure upon discovering a difference between the addresses in a policy and a notice of loss, was to "code" the policy to Michigan retroactive to the date the insured went to Michigan. The Court indicated that this would have the effect of automatically including the timeframe after the insured returned to Michigan in the "earned car days" total from which the insurer calculated the "total earned car years" figure it reported to the MCCA; therefore, the insurer "would have paid an assessment on that policy and would be entitled to indemnification." Id. Although this language would appear to indicate that an insurer may retroactively reform a policy even after the loss or accident if the premium is paid, we do not believe that the Travelers' panel intended to allow for a reformation five years after the fact as argued by plaintiff in this case. Indeed, to the extent that the case supports such a proposition, we decline to follow it.
First, application of the principles of statutory construction to M.C.L. § 500.3104 defeats plaintiff's argument.
The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Rose Hill Center, Inc. v. Holly Twp., 224 Mich.App. 28, 32, 568 N.W.2d 332 (1997) (citations omitted).]
Further, statutes should be construed so as to prevent absurd results, injustice, or prejudice to the interests of the public. Camden v. Kaufman, 240 Mich.App. 389, 395, 613 N.W.2d 335 (2000).
To interpret M.C.L. § 500.3104 as requiring indemnification in a circumstance such as this where plaintiff has reformed the insurance policy would circumvent the statute and lead to an unreasonable result. In re Michigan Cable Telecommunications Ass'n Complaint, 239 Mich.App. 686, 692, 609 N.W.2d 854 (2000). Furthermore, no language in § 3104 allows a member of the MCCA to reform a non-Michigan insurance policy for the sole purpose of gaining indemnity under subsection 3104(2).
In Preferred Risk, supra at 725, 449 N.W.2d 660, our Supreme Court addressed the legislative intent regarding M.C.L. § 500.3104 and stated:
In our view, the fact that the Legislature granted the [MCCA] the authority to charge premiums only with respect to policies written in Michigan providing the security required by § 3101(1) for the owners or registrants of vehicles required to be registered in the state, compels the conclusion that it intended to similarly limit the [MCCA's] liability for indemnification under § 3104(2). Put simply, we can think of no reason why the Legislature would want to provide *161 such indemnification coverage to insurers, even member insurers who do a significant amount of business within this state, absolutely free of charge or, perhaps more appropriately, at no cost to them. [Emphasis in original.]
Portions of M.C.L. § 500.3104 provide that the MCCA "charge to members of the association a total premium sufficient to cover the expected losses and expenses of the association which the association will likely incur during the period for which the premium is applicable," and that the MCCA "[r]equire payment of the premium in full within 45 days after the premium charge [or] [r]equire payment of the premiums to be made periodically to cover the actual cash obligations of the association." MCL 500.3104(7)(d), (7)(e)(i), and (7)(e)(ii) (emphasis added).
We conclude that the clear language of the statute does not allow plaintiff to make a premium payment to cover a period from August 1992 through March 1993 five years after the accident and claim occurred and the covered period expired. To allow reformation of an insurance policy and allow the insurer to make a premium payment to the MCCA at the time of reformation, and not during the applicable period of coverage, would be an absurd interpretation of M.C.L. § 500.3104. If we were to accept plaintiff's argument, we would set a precedent by which an insurer could withhold premium payments for policyholders who moved to Michigan, then, upon a loss exceeding $250,000, the insurer could simply reform the contract, submit the previously due premium payments, and be reimbursed for claims paid in excess of $250,000. Under that situation, the MCCA would be deprived of premiums for policies on which no claims are made, thus defeating the "spread the risk" concept in insurance. Bourne v. Farmers Ins. Exchange, 449 Mich. 193, 200, 534 N.W.2d 491 (1995); see, also, Preferred Risk, supra at 729, 449 N.W.2d 660. We decline to establish such a precedent.
Next, we address the issue of reformation of the insurance contract. An automobile insurance policy may be reformed as a result of fraud, mutual mistake, or inequitable conduct. Harwood v. Auto-Owners Ins. Co., 211 Mich.App. 249, 254, 535 N.W.2d 207 (1995). The issue whether the insurance policy could be reformed in the present action is moot because pursuant to the consent judgment, the policy was in fact reformed. Thus, the question becomes what effect does the reformation have on defendant's obligation to indemnify under M.C.L. § 500.3104 and the law of reformation?
In Troff v. Boeve, 354 Mich. 593, 598, 93 N.W.2d 311 (1958), our Supreme Court discussed the issue of reformation in relation to third parties not involved in any contract and stated:
It is further urged that notwithstanding the knowledge of the several plaintiffs that the easement over the driveway must be in writing, their reliance upon the oral statement of defendants' agent could result in reformation of the deed in some cases. Possibly, but in this case there is also involved the property and rights of an innocent third partythe Boeves. If reformation of the deed is granted here the easement must be constructed over the property of defendants Boeve, who acquired such in good faith reliance upon a clear abstract of title which contained no mention of any easement.
Further, this Court has recognized that once an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle, the insurer generally is estopped from asserting that the policy should be rescinded or reformed. Lake States Ins. Co. v. Wilson, *162 231 Mich.App. 327, 331, 586 N.W.2d 113 (1998).[2]
Although Troff and Wilson involve situations where a party is seeking reformation, and not where reformation has already occurred, the holdings in these two cases clearly stand for the principle that innocent third parties should not be burdened by the effects of reformation of a contract entered into by others. In the present case, the MCCA could be considered an innocent third party where the result of the reformation by plaintiff and the DeGraves, if plaintiff's argument is given effect, is that the MCCA would suffer a significant financial loss in indemnifying plaintiff without having received timely premium payments as required by the statute. Therefore, we conclude that the reformation should have no effect on the MCCA's right to deny indemnification under M.C.L. § 500.3104.
In effect, M.C.L. § 500.3104 creates a contract between the MCCA and insurers wherein the MCCA promises to indemnify insurers for claims paid by the insurers in excess of $250,000 and the insurers pay a premium to the MCCA for the coverage. In Preferred Risk, supra at 715, 716, 449 N.W.2d 660, our Supreme Court stated that "[i]n practice, the [MCCA] acts as a kind of `reinsurer' for its member insurers," and that "[l]ike any insurer, the [MCCA] charges each of its members a premium for the coverage it provides, which is based on the number of car years of insurance the member writes in Michigan." In essence, plaintiff is requesting that an insurance claim be paid where no timely premium was paid, where plaintiff attempted to pay the premium after it was due, and after the insurance claim was made. Plaintiff's argument simply cannot withstand scrutiny.
In Glass v. Harvest Life Ins. Co., 168 Mich.App. 667, 670, 425 N.W.2d 107 (1988), the decedent's brother directed his wife, after the decedent's death, to mail a predated check to the defendant insurer in order to cover a late life insurance premium. This Court held that "[t]he policy terminated when the decedent failed to pay the premium within the contractual grace period." However, the Court in Glass also held that the defendant insurer waived its right to assert the policy lapse by accepting the late premium payment without further review or investigation. Id. at 670-671, 425 N.W.2d 107.
In Auto Club Ins. Ass'n v. Dennie, 188 Mich.App. 634, 635-636, 470 N.W.2d 409 (1991), the defendant was involved in an automobile accident. He had failed to timely pay a premium, but the insurer received a late premium payment three days before the accident. The Dennie Court found in favor of the insurer and denied coverage on the basis that "[t]he mere temporary retention of premium payments, without more, however, is conditional and does not bind the insurer to provide coverage if there is a prompt refund of premium upon the full facts concerning the status of the policy becoming known to the insurer." Id. at 637, 470 N.W.2d 409.
Turning to the present case and considering the relationship between the MCCA and plaintiff as an insurer and insured, the MCCA rejected the late premium payment from plaintiff that was made on the basis of the reformation of the insurance policy. Because the premium payment was tendered after the coverage period expired *163 and after the accident occurred, Michigan case law regarding general insurance principles does not support a finding that the MCCA be required to indemnify plaintiff.

III. CONCLUSION
The trial court did not err in granting the MCCA's motion for summary disposition under MCR 2.116(C)(10) because the reformation of the DeGraves' California automobile insurance policy into a Michigan insurance policy complying with Michigan no-fault law is ineffective; consequently, defendant was entitled to a judgment as a matter of law.
We affirm.
NOTES
[1] MCL 500.3101(1) provides in relevant part: The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance.
[2] We note, however, that Lake States, supra at 331-332, 586 N.W.2d 113, states further that reformation or rescission may occur if fraud or a material misrepresentation occurred, the insurance coverage was considered optional, and the fraud could not have been ascertained easily by the insurer. That is not the case here.