**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0468n.06

No. 10-2409

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 02, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MICHIGAN CATASTROPHIC CLAIMS | ) | DISTRICT OF MICHIGAN |
| ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**BEFORE:  GUY, COLE, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.**  This case involves a dispute between Old Republic Insurance Company, an insurer authorized to write auto insurance in Michigan, and the Michigan Catastrophic Claim Association (MCCA), a private, non-profit association established to spread the risk of catastrophic claims and ensure that Michigan's no-fault provision for unlimited personal injury protection benefits does not place too great a burden on insurers.  After the MCCA refused to make payments to Old Republic on a catastrophic claim, Old Republic brought this litigation to determine whether the MCCA's statutorily mandated obligation to indemnify for "ultimate net loss" required the MCCA to cover risk-sharing arrangements between insurers and insureds.  The district court, however, never reached this issue of first impression, holding instead that Old Republic failed to establish that it had paid premiums on the vehicle involved in the catastrophic accident.  Based on

this finding, the district court held that Old Republic was not eligible to receive indemnification from the MCCA and therefore granted the MCCA's motion for summary judgment.

Although a member insurer must prove that it has paid the premium on the specific policy implicated by a catastrophic claim, summary judgment was not yet warranted in this case. The record does not yet show the absence of a genuine issue of material fact regarding whether Old Republic paid sufficient premiums to cover all CSX Corporation vehicles, among them the Tarnoski vehicle that is at the center of this litigation. A remand is therefore necessary.

This litigation traces back to 2004, when CSX Corporation employee Donald Tarnoski was severely injured after his truck ran off the road and struck a bridge support. Under Michigan's no-fault insurance law, which provides for unlimited personal injury protection benefits, M.C.L. § 500.3107, Tarnoski received over $600,000 for his catastrophic claim. In 2004, Old Republic insured CSX Corporation under Business Insurance Policy No. MWTB 18629, which included the standard Michigan personal injury protection coverage. This policy obligated Old Republic "to pay personal injury protection benefits to or for an 'insured' who sustains 'bodily injury' caused by an 'accident' and resulting from the ownership, maintenance or use of an 'auto' as an 'auto.'" R. 45, District Court Order, at 3.

The instant dispute arose when the MCCA refused Old Republic's request for payments related to Tarnoski's accident. After the MCCA sent its final letter denying Old Republic's request, Old Republic filed this case in the district court, seeking a declaration of its right to receive indemnification from the MCCA for the personal injury protection benefits payable to Tarnoski under Michigan's No-Fault Act.

The MCCA is an unincorporated, non-profit association of insurers, created by the Michigan legislature in 1978, "in response to concerns that Michigan's no-fault law provision for unlimited personal injury protection benefits placed too great a burden on insurers, particularly small insurers, in the event of 'catastrophic' injury claims." *Preferred Risk Mut. Ins. Co. v. MCCA*, 449 N.W.2d 660, 661 (Mich. 1989). The MCCA, which was established under M.C.L. § 500.3104, exists "to indemnify member insurers for losses sustained as a result of the payment of personal protection insurance benefits" that exceed a statutory threshold. *Id*. Under § 3104(1), "[e]ach insurer engaged in writing insurance coverages that provide the security required by section 3101(1)[1] within this state, as a condition of its authority to transact insurance in this state, shall be a member of the [MCCA] and shall be bound by the plan of operation of the association." As a member insurer, the MCCA will indemnify "100% of the amount of ultimate loss sustained under personal protection insurance coverage in excess" of certain statutory thresholds. M.C.L. § 500.3104(2)(a)-(k). "Ultimate loss" is defined as the "actual loss amounts that a member is obligated to pay and that are paid or payable by the member . . . ." M.C.L. § 500.3104(25)(c).

The Michigan legislature granted the MCCA the authority "to charge its members a premium that would cover the anticipated losses and expenses of the MCCA," which allows "member insurers

[1] Section 3101(1) of Michigan's No-Fault Act states in full:

The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance. Security shall only be required to be in effect during the period the motor vehicle is driven or moved upon a highway. Notwithstanding any other provision in this act, an insurer that has issued an automobile insurance policy on a motor vehicle that is not driven or moved upon a highway may allow the insured owner or registrant of the motor vehicle to delete a portion of the coverages under the policy and maintain the comprehensive coverage portion of the policy in effect.

to spread the risk of catastrophic claims." *Kingsway Gen. Ins. Co. v. Austin*, No. 08-12123, 2008 WL 5188263, at \*6 (E.D. Mich. Dec. 8, 2008). Under § 3104(7)(d), the MCCA first estimates the amount it will need to pay unlimited lifetime personal injury protection benefits on all catastrophic claims and other expenses during the applicable period, then "charges the member insurers individual premiums based on their respective shares of the state's auto insurance market." *Preferred Risk*, 449 N.W.2d at 662 n.5. After arriving at the total premium to cover costs, the MCCA divides that total premium by the total written car years of insurance reported by all member insurers to deduce an average premium per car. These calculations form the basis of what the MCCA charges its member insurers, which is adjusted as necessary at the end of the year.

Each member insurer of the MCCA is "charged an amount equal to that member's total written car years of insurance providing the security required by section 3101(1) . . . written in this state during the period to which the premium applies, multiplied by the average premium per car." M.C.L. § 500.3104(7)(d). According to § 4.01(h) of the MCCA's Plan of Operation, "written car years" is defined as "the number of net direct written vehicle years (or the total number of net direct written vehicle months divided by twelve, if so reported) of insurance providing to any and all vehicles . . . the security required by Section[ ] 3101 . . . written in the State of Michigan by each Member . . . ." R.10-14, MCCA Plan of Operation, at Section 4.01(h). Members are responsible for determining the appropriate number of car years, and, "[t]he method each Member . . . uses to calculate Written Car Years for the purpose of reporting such information to the Association shall be the same method the member uses to calculate the number of written car years the member reports to its statistical agent." *Id.* The Plan of Operation also states that the MCCA "ha[s] the right to audit and verify any Member's . . . determination of a premium payable . . . ." *Id.* at Section 9.05.

4

In its final letter denying Old Republic's claim for reimbursements related to the Tarnoski accident, the MCCA stated that it was not obligated to reinsure claims paid under fronting policies because the member insurer does not incur an "ultimate loss," as defined by M.C.L. 500.3104(25)(c). R.10-6, Old Republic's SJ Motion, Ex. D, May 5, 2008 Letter from MCCA. In addition to the standard commercial no-fault policy, Old Republic had entered into a reinsurance agreement with CSX Corporation, R. 10-10, Reinsurance Greement - T265, typically known as a "fronting" policy, whereby CSX Corporation paid significantly lower premiums in return for assuming financial responsibility for losses required to be paid under the policy. Under the fronting policy, Old Republic agreed to administer any claims.

Old Republic filed a declaratory judgment action regarding its right to receive payments from the MCCA for the personal injury protection benefits payable under CSX Corporation's fronting policy. Old Republic then filed a motion for summary judgment on this issue of first impression, asking that the district court determine that the MCCA's statutorily mandated obligation to indemnify for "ultimate net loss" requires the MCCA to cover risk-sharing arrangements between insurers and insureds. The MCCA opposed this motion and filed its own motion for summary judgment, claiming—for the first time—that Old Republic had not paid the requisite premiums on the vehicle involved in the Tarnoski accident, and thus could not be indemnified. Old Republic requested time to search its records to find proof of the premiums paid, and produced a twenty-five page document, including a list of 158 CSX Corporation vehicles with their corresponding identification numbers, model, make, and year. R. 42-2, Supplemental Br. for MCCA, Ex. A, at 4-7. On the list, there is no clear indication that the vehicle driven by Tarnoski on the day of the accident was covered.

5

After receiving the information from Old Republic, the MCCA served Old Republic with a notice of deposition under Rule 30(b)(6), requesting an individual to provide information regarding "[w]hether Old Republic paid an MCCA assessment for the CSX vehicle . . . for the assessment year at issue." R 47-4, Brockhaus Dep., Attachment A, at 3. Old Republic designated two employees to testify: Vice-President and Controller David Brockhaus and Assistant Controller and Assistant Vice-President David Kostenbader.

After discovery was completed, the district court heard oral arguments on the cross motions for summary judgment, and ultimately granted the MCCA's motion. The district court held that "[t]he issue of whether the MCCA's interpretation of 'ultimate loss' under Michigan's No-Fault Act is correct is not ripe," R.45, District Court Order, at 8, because Old Republic "failed to establish that it paid premiums on the vehicle [involved in the Tarnoski accident] owned by CSX Corporation." *Id.* at 7. As failure to pay a premium disqualifies a member insurer from receiving indemnification from the MCCA, the district court determined that it was not necessary to address the initial issue raised by Old Republic in its declaratory judgment action. *Id.* at 8. After reviewing the 25-page untitled document provided by Old Republic, as well as the depositions from the two Old Republic executives, the district court held that Old Republic had not provided sufficient admissible evidence "that it paid the requisite premium to the MCCA on the vehicle involved in the Tarnoski claim," and thus could not withstand summary judgment. *Id.* at 9-10.

Old Republic filed a motion for relief from judgment, arguing that the court had misconstrued how MCCA assessments are paid by member insurers, and that premiums are paid to the MCCA based on written car years, not the number of vehicles insured. The district court held that this was a new argument that was not raised in Old Republic's previously filed briefs, and thus could not be

raised on a motion for reconsideration. R.49, District Court Order Re: Relief from Order, at 2. In addition, to the extent that Old Republic argued that it established a question of fact as to whether the Tarnoski vehicle was insured under the CSX Corporation policy, the district court held that with this assertion Old Republic "merely reargue[d] its previous position the Court considered in its Order dismissing the matter." *Id.* Old Republic's motion for relief from judgment was consequently denied. Old Republic timely appeals the district court's grant of summary judgment to the MCCA.

Although Michigan's No-Fault Act does not require either payment or reporting on a per vehicle basis, Old Republic must still prove that it paid sufficient premiums to cover all of CSX Corporation's vehicles, including the one involved in the Tarnoski accident. It is not clear, however, whether the district court sufficiently recognized the scheme for how vehicles become covered by the MCCA. Under the plain language of Michigan's No-Fault Act and the MCCA's Plan of Operation, MCCA premiums are not charged on a per vehicle basis. In both documents, the premiums charged member insurers are based on "written car years." For instance, under § 3104(7)(d), it states that "[e]ach member shall be charged an amount equal to that member's total written car years of insurance . . . ." Similarly, in the MCCA's Plan of Operation, the "final premium assessment" charged each member insurer is "an amount equal to the sum of . . . such member's total Written Car Years . . . multiplied by the Average Premium Per Car for the period . . . ." R.10-14, MCCA Plan of Operation, at Section 9.03(b). The words "per vehicle" or "VIN" are not used in either document to describe how insurer members' premiums should be determined or reported.

Although the MCCA determines an average premium per car, M.C.L. § 500.3401(7)(d), which is multiplied by the member insurer's reported number of car years, R.10-14, MCCA Plan of Operation, at Section 9.03(b), the member insurers are only responsible for reporting their number

7

of written car years. The number of written car years reported by the insurer member is determined by the member, and the Plan of Operation specifically states: "The method each Member . . . uses to calculate Written Car Years for the purpose of reporting such information to the Association shall be the same method *the member* uses to calculate the number of written car years the member reports to its statistical agent." *Id.* at Section 4.01(h) (emphasis added).

Though the statute or Plan of Operation could have required member insurers to report the total number of cars insured on their policies, instead of written car years, such language is absent. This distinction is important, as the MCCA recognizes in its brief: "Where a member writes a one-year policy covering two vehicles, the member has written two car-years of insurance; where a member writes a six-month policy on a single vehicle, the member has written one-half of a written car year . . . ." Appellee Br. at 23. In this example, if a member insurer were reporting data to the MCCA for the purpose of calculating premiums, it would report 2.5 written car years, not 3 vehicles covered. Similarly, Old Republic gives the example of an insured who buys 50 one-year policies for 50 vehicles, for a total of 50 written car years, and then replaces 10 of the vehicles with newer cars over the course of the year. While the "written policy years" reported by the insured would still be 50 years, the insured's total inventory would be 60 vehicles. Appellant Brief at 29.

The definition of "Written Car Years" from the Plan of Operation, R.10-14, MCCA Plan of Operation, at Section 4.01(h), supports the examples put forth by both the MCCA and Old Republic. Section 4.01(h) of the Plan defines "Written Car Years" as "the number of net direct written vehicle years (or the total number of net direct written vehicle months divided by twelve, if so reported) of insurance *providing to any and all vehicles* . . . the security required by Section[ ] 3101 . . . written in the State of Michigan by each Member . . . as applicable." (emphasis added). While § 3101(1)

dictates that all vehicles "driven or moved upon a highway" must be insured, this does not change the fact that the member insurer is only required to report their coverage needs on a written car year basis.

The MCCA provides numerous examples from Old Republic's briefs, motions, and depositions to argue that Old Republic admitted that it pays premiums on a per vehicle basis. However, these are not really "admissions"; rather, they are either testaments regarding how Old Republic calculates its written car years or statements that the premium for the policy covering the Tarnoski vehicle was paid. In light of the plain language of the statute and the Plan of Operation, it is clear that premiums are not calculated on a per vehicle basis. R.10-14, MCCA Plan of Operation, at Section 9.03(b).

Still, the MCCA makes a valid point that, without keeping a record of the vehicles insured, it would be difficult to determine the appropriate number of written car years and whether a member insurer had paid its premium correctly. In addition, it would be hard for an insurer to prove that all vehicles on the road were properly insured, as required by § 3101(1). These concerns relate to the issue that most directly governs this appeal: whether Old Republic has provided sufficient proof to survive summary judgment on the factual issue of whether it paid the requisite premium in this case to be eligible for indemnification by the MCCA under M.C.L. § 500.3104(2).

While the MCCA's Plan of Operation does not dictate that a member insurer must supply a list of vehicles, VINs, and matching policy numbers, Michigan case law does require sufficient proof that the premium for the specific policy implicated by a claim has been paid before the member insurer may receive indemnification from the MCCA. By focusing on Old Republic's failure to provide a list of vehicles and corresponding premium payments, the district court appears to have

9

prematurely determined that Old Republic could not prove that it paid sufficient premiums to warrant indemnification from the MCCA. The fact that Old Republic has not proven that a specific premium for the Tarnoski vehicle has been paid does not mean that Old Republic could not show that it paid sufficient premiums for the correct number of car years, and that the Tarnoski vehicle was part of that total.

A genuine dispute arguably remains as to whether Old Republic could prove that it paid sufficient premiums to cover all of the CSX Corporation vehicles, including the Tarnoski vehicle. Old Republic has provided more than "merely colorable" evidence that it has paid premiums for 157 car years of insurance, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). During discovery, Old Republic provided an untitled list of 158 vehicles with VINs, R. 47-4, Brockhaus Dep, Exhibit 3, though there is a discrepancy between the 157 vehicles discussed by David Brockhaus, Old Republic's representative selected to explain its premium payment system, and the 158 vehicles on the untitled list. *Id.* at p. 17 (deposition), p. 6 (document). Furthermore, the document does not contain any indication that the Tarnoski vehicle is on the list, and there is no corresponding number for the months or years that each car was on the road, making it is impossible to determine if Old Republic reported the correct number of written car years. Finally, David Brockhaus, Old Republic's representative, admitted that he did not know if the list of 157 or 158 vehicles, which allegedly included the Tarnoski vehicle, was even covered by the CSX Corporation policy. *Id.* at p. 10, 12-15 (deposition), p. 4-5 (document).

These weaknesses in Old Republic's case support the conclusion that Old Republic did not adequately show coverage of the particular vehicle. But given the way that premiums are calculated, it would be sufficient for Old Republic instead to show that it had properly calculated its total car

years. The language of the district court's order suggests that the court was looking for evidence of a premium tied specifically to the vehicle in the Tarnoski claim. A remand is therefore warranted.

The district court and the MCCA incorrectly suggest that § 9.05 of the Plan of Operation requires that "a member provide a list of vehicles that correspond to the premium payment made by the member." R. 45, District Court Order, at 7; *see also*, Appellant Br. at 23. Instead, § 9.05 of the Plan of Operation simply states that the MCCA has "the right to audit and verify any Member's . . . determination of a premium payable under this Article." R.10-14, MCCA Plan of Operation, at Section 9.05. While the Member "*shall* provide such documentation supporting its determination of the premium payable as the Association may request," *id.* (emphasis added), there is nothing in the Plan or the Michigan No-Fault Act to indicate exactly what types of records member insurers must keep. As long as member insurers keep the requisite information on file, and that information proves that sufficient premiums have been paid to cover all vehicles that should be covered under § 3101(1), then the member insurer is within the parameters of the Plan of Operation.

Presumably, the easiest way to prove that all premiums have been paid and that the member insurer's written car years have been correctly calculated would be to keep a list detailing vehicles, VINs, matching policy numbers, and the length of each policy, including whether cars have been replaced. However, this is not required. Using the previous example where an insured bought 50 one-year policies for 50 vehicles, for a total of 50 written car years, and then replaced 10 of the vehicles with newer cars over the course of the year, it is possible to imagine how the insured would be able to prove a premium had been paid without matching policy premiums to vehicles. If the insured paid a premium for 50 written car years of insurance, and kept a detailed list of all the vehicles replaced and the time each car was on the road, to verify that it added up to 50 years, the

11

insured would be able to prove that all of its cars were covered without necessarily matching a premium payment to a vehicle's VIN.

Even though the plan and statute do not lay out specifics regarding the type of records that must be kept, Michigan case law does say that the member insurer must be able to prove that sufficient premiums have been paid before it can receive indemnification from the MCCA for a claim under a specific policy. This is true because, "[i]n effect, M.C.L. § 500.3104 creates a contract between the MCCA and insurers wherein the MCCA promises to indemnify insurers for claims paid by the insurers in excess of $250,000 and the insurers pay a premium to the MCCA for the coverage." *Liberty Mut. Ins. Co., v. MCCA*, 638 N.W.2d 155, 162 (Mich. Ct. App. 2001). Under this contract, member insurers are required to "pa[y] for the protection of § 3104," *Preferred Risk,* 449 N.W.2d at 667, and "an insurer's failure to pay *the* premium as required by Michigan no-fault law prevent[s] an insurer from being indemnified by the MCCA," *Liberty Mut. Ins. Co.,* 638 N.W.2d at 158-59 (emphasis added).

In the end, the records at Old Republic, and its reliance on the record keeping by CSX Corporation, Reply Br. at 2, are "significantly probative" to prevent a grant of summary judgment in the MCCA's favor at this time. *Anderson,* 477 U.S. at 249. However, summary judgment may yet be available if the MCCA can show there is no genuine issue regarding whether Old Republic failed to calculate car years properly for its fleet as a whole. If, on the other hand, there is evidence that the car years were properly calculated, the fact that Old Republic paid benefits on the Tarnoski vehicle is evidence that the vehicle was among those covered by the policy.

We vacate the district court's grant of summary judgment, and remand for further proceedings consistent with this opinion, including the possibility of further discovery.