# STATE OF MICHIGAN

# COURT OF APPEALS

DALE MAURER, as conservator for RACHEL AMY MAURer[1], a legally incapacitated person,

        Plaintiff/Counterdefendant-
        Appellee,

v

FREMONT INSURANCE COMPANY,

        Defendant/Counterplaintiff-
        Appellant.

FOR PUBLICATION
September 18, 2018
9:00 a.m.

No. 336514
Tuscola Circuit Court
LC No. 14-028072-NF

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

SHAPIRO, J.

In December 2012, plaintiff Amy Maurer[1] was catastrophically injured in an automobile accident. Her car, along with all the family cars, had been insured with defendant Fremont Insurance Company since 2006. In October 2014, almost two years after the accident, Fremont advised Dale Maurer, who was the policyholder, that the policy was being rescinded by the company retroactive to 2006 and that therefore it had no obligation to pay for any of his wife's medical treatment, replacement services, or wage loss related to the 2012 accident.

Plaintiff sought a declaratory judgment that she is entitled to personal protection insurance (PIP) benefits from Fremont under the no-fault act, MCL 500.3101, *et seq*. Fremont filed a counterclaim for rescission. The parties filed competing motions for summary disposition. The trial court ruled in plaintiff's favor, determining that Fremont's rescission claim was not filed within the statute of limitations. Fremont appeals and for the reasons set forth below, we affirm.

---

[1] Mr. Maurer is his wife's conservator and filed this case on her behalf. He did not bring any claim in his own right. "Plaintiff" as used in this opinion refers to Mrs. Maurer.

-1-

## I. FACTS

### A. PRE-ACCIDENT EVENTS

In 2006, Mr. Maurer contacted an insurance agent to purchase no-fault insurance for the three family vehicles.  Shortly after, Mr. Maurer received a copy of the Fremont application that had been prepared by the agent, and the agent told him to sign and send it to Fremont.  The vehicle in question was a 1992 Buick Regal that was used primarily by Mrs. Maurer.  She was employed part-time by the United States Post Office (USPS) as a clerk and delivered mail for half a day on some Saturdays as a relief driver when other drivers took time off.  The application listed several questions about the use of the vehicles.  One of these questions asked, "Any vehicles used in any business?  This includes but is not limited to snowplowing, sales, artisan use, delivery of newspapers, food, mail or any other items?"  Next to that question, the agent had entered "No."  Mr. Maurer testified that he noticed this answer and advised the agent that Mrs. Maurer sometimes used the car for mail deliveries on Saturdays.  The agent told him not to worry about it and that it was not necessary to change the answer.  The agent was independent but had authority from Fremont to bind them to policies.

No evidence was presented that Mrs. Maurer participated in completing the application or was aware of what answers were provided to the questions on the application.

Through the next several years, Mr. Maurer accepted automatic renewal of the policy by continuing to pay the premiums for all the vehicles when renewal notices were sent to them.  In early 2012, Mr. Maurer contacted the insurance agent to advise him that the 1992 Buick Regal was being replaced by a 2004 Buick Century.  Mr. Maurer provided uncontradicted testimony that when he did so, he again informed the agent that the vehicle used primarily by his wife, now the Buick Century, was being used, in part, to deliver mail.

### B. POST-ACCIDENT EVENTS

The auto accident in which Mrs. Maurer was injured[2] occurred on December 3, 2012.  Fremont promptly learned of the accident promptly, including the fact that Mrs. Maurer was

---

[2] According to her physician's report, Mrs. Maurer suffered a traumatic brain injury, respiratory failure, multiple internal injuries, and multiple orthopedic injuries.  In March 2016, her physician reported that she continues to suffer from

> severe neurological deficits that impair her both physically and mentally.  At this time, she is not able to make informed decisions.  Her comprehension and cognition is severely limited.  She has very little insight and is unable to communicate consistently.
>
> . . . She has right sided weakness involving both the arm and the leg . . . . She has severe spasticity and tone in the right arm and leg.  She is totally

delivering mail at the time. On December 14, 2012, an application for no-fault benefits was submitted to Fremont. It indicated that the accident occurred during work and that she was employed with the USPS as a mail carrier. The police report also indicated that Mrs. Maurer was delivering mail when the accident happened.

A suit was filed on Mrs. Maurer's behalf against the at-fault driver in 2013. Fremont was informed of this third-party tort case and monitored its progress. Because Mrs. Maurer was delivering mail when she was injured, her medical expenses were paid pursuant to the Federal Employee Compensation Act (FECA), 5 USC 8101 *et seq.* However, under 5 USC 8132, USPS was entitled to reimbursement from a judgment obtained in plaintiff's third-party action, and it asserted a lien in anticipation of that event. After the third-party action was resolved, USPS's lien was satisfied from the tort recovery, and Fremont, as her no-fault carrier, became liable to reimburse plaintiff for that amount. See *Sibley v Detroit Auto Inter-Insurance Exch*, 431 Mich 164; 427 NW2d 528 (1988).

Fremont did not agree to reimburse plaintiff the sum she paid to the federal government to reimburse them for the cost of her medical care. In January 2014, plaintiff filed suit seeking a judgment declaring that Fremont had to do so.

Although the accident occurred on December 3, 2012, Fremont did not seek to rescind the no-fault policy until after the tort suit concluded, nearly two years later. On October 27, 2014, Fremont sent what it captioned as a "Letter of Rescission" to Mr. Maurer. It stated that Fremont was rescinding the policy on the ground that—in the 2006 application—Mr. Maurer inaccurately answered the question regarding the business use of the vehicle. Fremont's letter described this as a "material misrepresentation regarding driver information, usage of an insured vehicle and miles driven." According to the letter, "[u]pon rescission, the policy is void as of inception such that there is no coverage applicable for the claim filed by you." Consistent with Fremont's assertion of rescission, the letter included a check to Mr. Maurer for a refund of all premiums paid since 2006. Mr. Maurer returned the check to Fremont. In January 2015, Fremont filed a counterclaim for rescission in which it asked the trial court to declare that the policy issued to the Maurers was rescinded and *void ab initio* and to award "other equitable relief as is proper under the facts and circumstances."

The rescission letter did not assert that Fremont would have declined to insure the vehicle had it known that it was being used for occasional mail delivery. The letter stated that the policy was being rescinded because "[h]ad we been informed of the [business] use of the vehicles on the policy we would have adjusted the rate accordingly resulting in an increase of premium, and issued a different insurance contract to you with applicable endorsements under the

---

dependent on others for all aspects of her care throughout the day. She will likely require assistance for the rest of her life.

circumstances."[3] And, although Fremont repeatedly refers to a contractual right to rescind in the case of fraud, the policy contains no rescission provision. The policy did, however, contain two relevant provisions.

First, it provided how the insurer could address errors or misrepresentations in the application. It provided that Fremont could adjust its premiums retroactively if it discovered that the use category of the car was in error or had been changed. It stated that the change in premium will be made "at the time of such changes or when we become aware of the changes, if later." There is nothing in the record, however, to indicate that during the 22 months between the accident and the rescission letter Fremont sought any back payment or increased its premiums.

Second, the contract contains a provision that specifically addresses intentional misrepresentation, i.e., fraud. That provision narrowly refers to an exclusion to be applied only to the person who committed the fraud. It reads: "We will not cover any person seeking coverage under this policy who has intentionally concealed or misrepresented any material fact, made fraudulent statements, or engaged in fraudulent conduct with respect to the procurement of this policy . . . ."[4]

The parties filed cross-motions for summary disposition, and the trial court ruled that Fremont's rescission claim was barred by both the statute of limitations and the innocent-third-party doctrine. The innocent-third-party doctrine provided a bright-line rule that if the policy holder fraudulently provided false information on the application, any rescission based on that fraud would not apply to other persons covered by the policy who did not participate in the fraud. After the trial court's ruling, this Court held that the innocent-third-party doctrine had been abrogated. *Bazzi v Sentinel Ins Co* (*Bazzi I*), 315 Mich App 763; 891 NW2d 13 (2016).[5] In light

---

[3] The parties dispute the amount of the premium increase that would have been applied. Plaintiff, based on documents produced by Fremont in discovery, claims that the difference would have been $4 per policy term. Fremont relies on other documents showing that if the car had been listed as primarily used for business the premium would have been approximately $170 higher. Fremont would also have issued a policy endorsement entitled "Federal Employees Using Autos in Government Business," that would have limited Fremont's liability exposure in the event plaintiff *caused* an accident while delivering mail. That circumstance is not present here because although the accident occurred when plaintiff was delivering mail, she was not at fault in the accident.

[4] The application also contained an "anti-fraud" warning that anyone making false statements in the application with intent to defraud was "guilty of insurance fraud." It did not, however, contain any language regarding rights or remedies.

[5] We held this appeal in abeyance pending the Supreme Court's resolution of *Bazzi*. *Maurer v Fremont Ins Co*, unpublished order of the Court of Appeals, issued May 31, 2018 (Docket No. 336514). Recently, the Supreme Court affirmed this Court's court ruling that the innocent-third-party doctrine has been abrogated, but reversed this Court's conclusion that the insurer was

of that decision, the trial court allowed Fremont to file a delayed motion for reconsideration. With that motion, Fremont also filed an untimely motion to amend its affirmative defenses to add a claim that, because Mr. Maurer purchased the policy and plaintiff was the titleholder and registrant of the vehicle, plaintiff was not entitled to coverage under MCL 500.3113(b). The parties again filed competing motions for summary disposition, and the trial court again granted summary disposition to plaintiff based on the statute of limitations. The motion to amend affirmative defenses was denied for lack of merit.

## II. ANALYSIS

Fremont raised two issues on appeal: (1) that the trial court erred in concluding that its rescission claim is untimely, and (2) that MCL 500.3113(b) precludes plaintiff from recovering no-fault benefits. We review de novo a trial court's grant or denial of summary disposition. *Batts v Titan Ins Co*, 322 Mich App 278, 284; 911 NW2d 486 (2017).

## III. STATUTE OF LIMITATIONS

Actionable fraud, also known as fraudulent misrepresentation, *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), requires that

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M&D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998).]

Silent fraud, also known as fraudulent concealment, acknowledges that suppression of a material fact, "which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud." *Id*. at 29 (quotation marks and citation omitted). But, in order for silent fraud to be actionable, the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud. *Id*. at 28-29; *Titan*, 491 Mich at 557.

Fremont's counterclaim asserted that the Maurers engaged in a material and fraudulent misrepresentation. Before the trial court, the parties agreed that claims of fraud are governed by MCL 600.5813's six-year limitations period. *Adams v Adams*, 276 Mich App 704, 710; 742 NW2d 399 (2007). They disagreed, however, about whether the claim accrued in 2006 when the application was inaccurately completed or in 2012 when the policy was last renewed before the accident.

---

automatically entitled to rescission. The Court explained that rescission is an equitable remedy to be awarded in the trial court's discretion. *Bazzi v Sentinel Ins Co* (*Bazzi II*), ___ Mich___, ___; ___ NW2d ___ (2018) (Docket No. 154442); slip op at 14-17.

Generally, a claim "accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. Plaintiff argues that Fremont's counterclaim for rescission was filed after the expiration of the six-year limitations period because the claim for rescission accrued in 2006 when the alleged intentional misrepresentation was made. Plaintiff points out that Fremont's letter rescinding the insurance policy explicitly stated that the reason for the rescission was Mr. Maurer's failure to disclose the business use of the vehicle in the 2006 application for insurance. Further, Fremont sought to return all premiums paid since the policy was first issued in 2006 demonstrating its belief that the fraud occurred at application. Accordingly, plaintiff argues, the wrongful act underlying the fraudulent misrepresentation claim occurred in 2006.

In its response to plaintiff's motion for summary disposition, Fremont developed a new position, arguing, contrary to its letter of rescission, that the rescission was not based on the 2006 application but on the failure of Mr. Maurer to advise Fremont of the business use of the vehicle when the policy renewed in 2012.[6] Fremont argued that, at that time, Mr. Maurer violated his duty to disclose that the vehicle was being used for business purposes. However, any such duty to disclose was defined or at least modified by Fremont's statement on the 2012 declaration sheet that unambiguously directs the policyholder to provide notice of any error or change concerning change to the insured's agent, not to Fremont. The precise wording was "[i]f the covered autos are not used as indicated above, *contact your agent*." (Emphasis added, capitalization removed). Thus, as to the 2012 renewal, Mr. Maurer fulfilled his contractual responsibility when he again advised the agent of the car's use for mail delivery.[7]

---

[6] A renewal policy is considered to be a new contract. See *Russel v State Farm Mut Auto Ins Co*, 47 Mich App 677, 680; 209 NW2d 815 (1973).

[7] Fremont does not concede that Mr. Maurer informed the agent of the vehicle's use, but does not offer any evidence to contradict his testimony. Nor has Fremont produced any proof of fraudulent intent. An insurance policy can be rescinded for fraud, but there must be an intentional misrepresentation of a material fact. *Bazzi II*, ___ Mich at___; slip op at 14. As noted, fraudulent concealment is only actionable when the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud. *Titan Ins Co*, 491 Mich at 555-557. However, Fremont offers no proof of intentional misrepresentation nor any proof that either Mr. or Mrs. Maurer acted with fraudulent intent. Indeed, the evidence is unrebutted that in 2006 and in 2012, Mr. Maurer twice advised his agent that the vehicle was used to deliver mail. These actions are inconsistent with the actions of a person engaging in fraud or intentional misrepresentation. Indeed, the application was submitted after the agent told Mr. Maurer that the answer to the question did not matter and to not worry about it.

The dissent reads the declaration sheets, specifically the sheet pertaining to the September 2012 renewal, as Mr. Maurer making representations regarding the use of the vehicles. However, this argument misunderstands the insurance renewal process. Deposition testimony from one of Fremont's claims manager established that Fremont prepared the declaration sheets and sent them Mr. Maurer for review. Mr. Maurer's obligation was to contact his insurance agent, not Fremont, to correct errors regarding the use of the vehicles. Again, there

-6-

We conclude that Fremont's claim for rescission accrued in 2006 when Mr. Maurer submitted the application containing the misrepresentation. That was the wrong upon which Fremont's claim rests. The allegation that Mr. Maurer failed to disclose the vehicle's use in 2012 fails, at least for purposes of summary disposition, because the uncontested evidence is that he complied with the directive on the declaration sheet to "contact your agent" in the event of any changes or inaccuracies in the description of the vehicle's use. Thus, we affirm the trial court's conclusion that Fremont counterclaim for rescission was untimely and that plaintiff was entitled to summary disposition.[8]

### III. MCL 500.3113

Fremont filed an untimely motion to amend its affirmative defenses to add a defense based on MCL 500.3113(b). On appeal, Fremont pursues this defense but its statement of questions presented does not assert that the trial court erred in denying the motion to amend. "Independent issues not raised in the statement of questions presented are not properly presented

---

is no evidence contradicting Mr. Maurer's testimony that he informed his agent that plaintiff used the vehicle to deliver mail. If the agent did not contact Fremont in turn, that does not support a fraud claim against the Maurers. Further, the dissent's focus on the declaration sheet identifying the Maurers' daughter as the driver of the vehicle is misplaced because it is undisputed that this mistake was attributable to Fremont.

In sum, Fremont has not proffered any evidence that Mr. Maurer set out to induce Fremont to sell him a policy with a lower premium or that he knew that the answer to that question would result in a lower premium. It is well settled that fraud "is not to be lightly presumed, but must be clearly proved . . . by clear, satisfactory and convincing evidence," and that "trial courts should ensure that these standards are clearly satisfied with regard to all elements of a fraud claim." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (quotation marks and citation omitted). For those reasons, Fremont failed to establish a question of fact as to fraudulent intent.

[8] Given our ruling, we need not address the parties' equitable arguments regarding rescission in this case. We note, however, that Fremont argues in its reply brief that it is seeking a legal, not an equitable, rescission. But Fremont does not argue that a different limitations period applies to legal rescissions. Further, we note that there is no rescission clause in the policy. We also question whether the distinction drawn by Fremont is still meaningful after the merger of law and equity. According to one respected treatise,

> In considering the availability and scope of judicial rescission, it is necessary to bear in mind that the great bulk of cases have been decided under the dual-court system of separate courts of law and of equity, with judicial rescission being historically an equitable remedy. This means that currently, in view of the widespread fusion of law and equity, many of the decided cases have no current value except to point to the existence of certain "equitable" principles which would still be followed by a court in determining whether rescission should be granted, although it was not a court of "equity." [2 Couch, Insurance, 3d, § 31:65, p 117.]

for appellate review." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001). Accordingly, whether the trial court so erred is not properly before us and, since the affirmative defense was never filed, Fremont may not seek to assert it on appeal. Nonetheless, we choose to address this unpreserved issue because it involves a question of law and the relevant facts are undisputed. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

Fremont's new argument is that because plaintiff was the titleholder and registrant of the vehicle, but her husband was the policyholder, plaintiff is not entitled to coverage under MCL 500.3113(b), which provides that

> [a] person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [MCL 500.3101] . . . was not in effect.

MCL 500.3101(1) provides that "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance."

The seminal case interpreting MCL 500.3113(b) is *Iqbal v Bristol West Ins Group*, 278 Mich App 31; 748 NW2d 574 (2008). In that case, we considered the plain text of MCL 500.3113(b) and concluded that the critical question was whether the *vehicle* was insured, not whether the owner or registrant had been the purchaser of the policy.

> [T]he phrase "with respect to which the security required by section 3101 . . . was not in effect," § 3113(b), when read in proper grammatical context, defines or modifies the preceding reference to the *motor vehicle involved in the accident*, here the BMW, and not the person standing in the shoes of an owner or registrant. The statutory language links the required security or insurance solely to the vehicle. Thus, the question becomes whether the BMW, and not [the] plaintiff, had the coverage or security required by MCL 500.3101. As indicated above, the coverage mandated by MCL 500.3101(1) consists of "personal protection insurance, property protection insurance, and residual liability insurance." While [the] plaintiff did not obtain this coverage, there is no dispute that the BMW had the coverage, and that is the only requirement under MCL 500.3113(b), making it irrelevant whether it was [the] plaintiff's brother who procured the vehicle's coverage or [the] plaintiff. Stated differently, the security required by MCL 500.3101(1) was in effect for purposes of MCL 500.3113(b) as it related to the BMW. [*Id.* at 39-40 (footnote omitted).]

In sum, *Iqbal* followed the "last antecedent" rule based on the plain language of the statute. "The 'last antecedent' rule of statutory construction provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation."

-8-

*Stanton v Battle Creek*, 466 Mich 611, 616; 647 NW2d 508 (2002) . Thus, the phrase "with respect to which the security required by [MCL 500.3101] . . . was not in effect" modifies only the last antecedent or clause which is "motor vehicle or motorcycle involved in the accident." The words "owner or registrant" are not part of the last antecedent.

Six years after *Iqbal* was decided, a panel of this Court read that decision as holding that at least one of the vehicle's owners had to obtain the policy in order "to avoid the consequences" of MCL 500.3113(b). *Barnes v Farmers Ins Exch*, 308 Mich App 1, 8-9; 862 NW2d 681 (2014).[9] We do not read *Iqbal* so narrowly and note that *Barnes* never addressed the plain text of the statute, which by the rules of grammar and the canons of legal interpretation[10] attaches the need for a policy to the vehicle and not the owner. Were the ruling in *Barnes* controlling under the facts of this case, we would declare a conflict with it. However, that is not necessary here because *Barnes* is plainly distinguishable. In that case, the purchaser of the insurance was neither a relative nor a resident of the same household as the plaintiff. In this case, the policy was purchased by plaintiff's husband, a wholly different scenario.[11] It would be very difficult to articulate any reason why the Legislature, by adopting MCL 500.3113, intended to prevent a spouse from procuring insurance on a family car when the vehicle is registered to the other spouse, or to impose a complete loss of no-fault coverage on the spouse owning the vehicle for letting his or her spouse procure the policy.[12] Certainly Fremont has not articulated a basis to find such intent. In the absence of a compelling reason to do so, we will not interpret MCL

---

[9] The Supreme Court has granted leave in a separate case to determine if *Barnes* was rightly decided. See *Dye by Siporin & Assoc, Inc v Esurance Prop & Casualty Ins Co*, 501 Mich 944; 904 NW2d 620 (2017).

[10] See Scalia & Gardner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 152 ("When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

[11] Moreover, the relevant exclusion in the insurance policy itself is consistent with *Iqbal* and inconsistent with *Barnes* because it turned on whether the vehicle was insured and not who procured it. That provision provided that Fremont would pay PIP benefits for bodily injury "[s]ustained to the owner or registrant of an auto or motorcycle involved in the accident and for which the security required under Michigan no-fault is not in effect."

[12] When interpreting statutes, our goal is to discern the Legislature's intent. *Batts*, 322 Mich App at 284. "[S]tatutes should be construed so as to prevent absurd results, injustice, or prejudice to the interests of the public." *Liberty Mut Ins Co v Mich Catastrophic Claims Ass'n*, 248 Mich App 35, 45; 638 NW2d 155 (2001).

500.3113(b) in a way that would so undermine both the purpose of the no-fault act[13] and the institution of marriage.[14]

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto

---

[13] "The purpose of the Michigan no-fault act is to broadly provide coverage for those injured in motor vehicle accidents without regard to fault." *Iqbal*, 278 Mich App at 37.

[14] Our dissenting colleague essentially concludes that if anyone other than an "owner" of the vehicle procures the policy, the owner(s) may not recover no-fault benefits under MCL 500.3113(b). Our colleague cites no authority for this position. The dissent does not reference the holding of *Iqbal*, which rejects that view. We presume that our colleague is relying on *Barnes*, which we have distinguished because this case involves spouses.

We also question the dissent's conclusion that Mr. Maurer does not qualify as an owner of the vehicle. The no-fault act defines owner, in part, as "[a] person renting a motor vehicle of having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." MCL 500.3101(*l*)(*i*). Mr. Maurer testified that he did not drive plaintiff's vehicle, but there has been no testimony or other evidence to suggest that Mr. Maurer did not have the *right* to use the vehicle. And to determine if he is an owner of the vehicle for purposes of the no-fault act, the focus is on the nature of his right to use the vehicle. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530; 676 NW2d 616 (2004). However, given our disposition of this issue, we need not resolve whether Mr. Maurer is an owner of the vehicle.